*245 OPINION OF THE COURT
Michael E. Hudson, J.
Defendant has moved pursuant to CPLR 3212 for partial summary judgment.[1] The court will grant the motion, in limited part.
The court has reviewed the following documents:
1. Claim,[2] verified May 22, 2006,[3] filed May 25, 2007;
2. Answer, verified June 28, 2007, filed June 29, 2007;
3. Amended answer,[4] verified April 25, 2011, filed April 26, 2011;
4. Notice of motion for partial summary judgment, dated April 15, 2011, filed April 18, 2011;
5. Affidavit in support of motion for partial summary judgment of Wendy E. Morcio, sworn to April 15, 2011, with attached exhibits, and affidavit of Melissa Trostle, sworn to April 14, 2011;
6. Affirmation of Lisa T. Sofferin, dated May 25, 2011, filed May 27, 2011, with attached exhibits;
7. Reply affidavit in support of motion for partial summary judgment of Wendy E. Morcio, sworn to May 27, 2011, filed June 1, 2011, with attached exhibits, and affidavits of Richard Woodward II, sworn to May 27, 2011, and Robert E Raymond, sworn to April 22, 2011;
8. Affidavit of Mark Alan Carlson, sworn to May 27, 2011, filed June 3, 2011;[5]
9. Letter of Wendy E. Morcio, dated June 8, 2011.
Claimant is a former inmate, having been confined at several state correctional facilities following his conviction in March of 2005 for a felony level driving while intoxicated charge. Mr. Carlson is also an amputee, with a right lower leg prosthesis, *246 and reported left leg impairments. He has filed this claim to recover damages for three matters that allegedly arose during his incarceration. The first incident reportedly occurred at Gowanda Correctional Facility (Gowanda) on May 31, 2005, and involved his alleged fall down a flight of stairs while he was traveling to the facility infirmary. According to claimant, his fall represented a consequence of a number of failings on the part of prison officials, ranging from his initial assignment to a multilevel facility, the failure to house or move him to a first-floor cell, a determination to supply him crutches rather than admit him to the infirmary after his prosthesis broke, and a refusal to allow him to use a facility elevator to travel to the infirmary. The second incident also arose at Gowanda on May 31, 2005, and involved the claimed failure of the facility medical staff to properly diagnose and treat a shoulder injury he allegedly sustained in the course of his fall. The third incident arose at Livingston Correctional Facility (Livingston) on October 25, 2005, and stems from the alleged negligent medical treatment of claimant’s right leg. Mr. Carlson contends more generally that over the periods in question the Department of Correctional Services (DOCS)[6] did not provide “reasonable accommodation(s)” for his disability, a failing that contributed to the injuries he has sustained. To support recovery for those incidents Mr. Carlson has urged causes of action for negligence, medical malpractice, and the violation of his civil rights in regard to cruel and unusual punishment under both the Eighth Amendment to the United States Constitution and article I, § 5 of the New York Constitution.
As defendant has noted, Mr. Carlson has also filed a federal court action that largely addresses the same incidents.[7] That action variously urges causes of action against DOCS and/or several of its employees or former employees for claimed civil rights violations under 42 USC § 1983,[8] as well as violations of title II of the Americans with Disabilities Act (42 USC § 12131 et seq.), the Rehabilitation Act (29 USC § 794 et seq.), and other constitutional claims, including cruel and unusual punishment under the Eighth Amendment and the New York Constitution.
*247 Defendant now moves for partial summary judgment dismissing the causes of action based upon negligence, state and federal constitutional claims, and any alleged failure to afford reasonable accommodations for his disability. Specifically, the State seeks dismissal of any requests for recovery based upon premises liability on the ground that claimant has failed to plead that the stairway on which he fell was defective in any manner. Defendant also seeks dismissal of the claims of negligence in Mr. Carlson’s assignment to Gowanda (claim, para 48 [A]) for lack of subject matter jurisdiction, urging that any challenge to such discretionary determinations can only be addressed in a proceeding under CPLR article 78. So also, defendant contends that the claim must fail to the extent premised on a purported failure of reasonable accommodation for his disability, and set forth within subparagraphs B, C, E, F, G, and H of paragraph 48 of the claim, as representing an insufficient pleading of a cause of action under the Americans with Disabilities Act (ADA) (42 USC § 12101 et seq.). The State further urges that even if properly pleaded, the Court of Claims lacks jurisdiction to consider an ADA claim against the State. Lastly, defendant seeks to dismiss the requests for recovery set forth within subparagraphs D, I, J, and K of paragraph 48 to the extent premised upon ordinary negligence, in that those allegations instead reflect efforts to recover for medical malpractice. For the reasons that follow, the court will grant defendant’s motion, in limited part.
Summary judgment is a drastic remedy, one which should not be granted where there is any doubt as to the existence of a triable issue of fact (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]), with issue finding rather than issue determination the focus of the court in reviewing the submissions (Sillman, 3 NY2d at 404). All evidence must be viewed in a light most favorable to the nonmoving party (Rotuba Extruders, 46 NY2d at 231). To obtain such disfavored relief a movant must establish his cause of action or defense “sufficiently to warrant the court as a matter of law in directing judgment” in his favor (CPLR 3212 [b]), and must do so by tender of evidentiary proof in admissible form (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979]). The failure to satisfy that initial burden requires the denial of motion, without considering the sufficiency of the opposing papers (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Conversely, once a movant has satisfied that burden the party opposing the motion would *248 have the burden of showing facts sufficient to require a trial of any issue of fact, or demonstrate an acceptable excuse for the inability to tender such proof in admissible form (CPLR 3212 [b]; Friends of Animals, 46 NY2d at 1067-1068; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
The court will grant summary judgment dismissing the cause of action under 42 USC § 1983. The State is not a “person” amenable to suit within the meaning of section 1983 (Will v Michigan Dept. of State Police, 491 US 58 [1989]), and recovery against the State under respondeat superior principles is not authorized under that statute (see Monell v New York City Dept. of Social Servs., 436 US 658, 691-694 [1978] [municipality not vicariously liable as employer for section 1983 violation by employees]). Summary judgment is also warranted with respect to the claimed violation of Mr. Carlson’s state constitutional rights, as this case does not fit into the “narrow remedy” envisioned for such litigation by the Court of Appeals in Brown v State of New York (89 NY2d 172, 192 [1996]). Such a tort claim will only be recognized where it is necessary to effectuate the purpose of the underlying state constitutional protection that a claimant invokes, and there is no other remedy available (Martinez v City of Schenectady, 97 NY2d 78 [2001]). Here, claimant is pursuing other causes of action in this court, and in federal court, which arise from the same matters upon which his state constitutional claim is based.
Summary judgment will similarly be granted to the extent claimant may have intended his allegations of a denial of reasonable accommodations for his disability as a basis for relief under the ADA. In granting dismissal the court must initially reject defendant’s assertion that the ADA would not provide claimant a money damages remedy, and instead would only afford him injunctive relief, which is beyond the jurisdiction of the Court of Claims. The ADA includes four subchapters, or titles, three of which prohibit discrimination on the basis of disability in varying contexts.[9] Title I (42 USC §§ 12111-12117), which addresses disability-based employment discrimination, and title III (42 USC §§ 12181-12189), which prohibits disability- *249 based discrimination in public accommodations by private entities, would have no application herein. Conversely, provisions within title II (42 USC §§ 12131-12165), which prohibits disability-based discrimination in the “services, programs, or activities of a public entity” (42 USC § 12132), could apply, since the term “public entity” is defined inter alia as including not just local governments, and state departments and agencies, but also the states themselves (see 42 USC § 12131 [1] [A], [B]). Title II has been held to apply to a state prison system, or a state in its operation of a prison system, and a disabled inmate can be a “qualified individual with a disability” (see 42 USC § 12131 [2]), subject to the protections of the statute (see United States v Georgia, 546 US 151, 153-154 [2006]; Pennsylvania Dept. of Corrections v Yeskey, 524 US 206, 210 [1998]). The Supreme Court has recognized the validity of the statute’s abrogation of state sovereign immunity in the circumstance where the actionable conduct under title II also violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as it incorporates the Eighth Amendment’s guarantee against cruel and inhuman punishment, and has left open the question of whether abrogation would also be recognized for title II violations that do not also invoke due process concerns under the Fourteenth Amendment (see United States v Georgia, 546 US at 157-159). Notably, title II includes a specific provision addressing remedies (42 USC § 12133, incorporating by reference 29 USC § 794a), which clearly authorizes money damages awards in claims against public entities. The Supreme Court has recognized that title II affords such relief (United States v Georgia, 546 US at 154 [“Title II authorizes suits by private citizens for money damages against public entities that violate § 12132”]). For that reason the court rejects the State’s assertion that under the ADA it could not be the subject of a private litigant’s claim for money damages, and instead could only be the subject of injunctive relief, which is beyond the jurisdiction of the Court of Claims. The court would also reject the assertion that even if a money damages claim could be pursued against the State under the ADA, jurisdiction would rest in Supreme Court, rather than the Court of Claims, as the Legislature has afforded the Court of Claims jurisdiction over actions for money damages against the State (Court of Claims Act §§ 8, 9).
*250 The State’s reliance upon Lugo v St. Nicholas Assoc. (18 AD3d 341 [2005]), in urging the lack of a damages remedy under the ADA is misplaced. Although the Appellate Division, First Judicial Department found in Lugo that the “ADA allows litigants to pursue actions only for injunctive relief, and does not provide a private right of action for monetary damages in a personal injury action” {id. at 342), that decision arose in the context of a disability discrimination claim against a private entity. Such a cause of action falls within title III of the ADA, and indeed Lugo expressly relied upon title Ill’s remedy provision, 42 USC § 12188 (a), and that section’s cross-reference to 42 USC § 2000a-3 (a), in finding that no money damages remedy was available. In this court’s view Lugo must thus be limited to title III claims. To the extent that Lugo has been cited in several unpublished decisions of the Court of Claims as authority for barring money damages claims in litigation against the State under title II {see e.g. Reynolds v State of New York, Ct Cl, July 20, 2006, Sise, EJ., claim No. 111088, motion No. M-71284),[10] any such interpretation must yield to that of the Supreme Court in United States v Georgia, since “[s]tate courts are bound by the decisions of the Supreme Court when reviewing Federal statutes or applying the Federal Constitution” (People v P.J. Video, 68 NY2d 296, 301-302 [1986], cert denied 479 US 1091 [1987]).
Nevertheless, summary judgment will be granted to the extent claimant now contends that his allegations of a denial of reasonable accommodations within his claim would constitute a basis for recovery under the ADA. Court of Claims Act § 11 (b) sets forth certain pleading requirements, among them that a litigant recite the “nature of’ the claim against the State. Those allegations must be made in a manner “specific enough so as not to mislead, deceive or prejudice the rights of the State” (Heisler v State of New York, 78 AD2d 767, 767 [1980]), and pleading sufficiency under section 11 (b) is measured pursuant to a more rigorous standard than under the CFLR (see Robin BB. v Kotzen, 62 AD3d 1187, 1188 [2009]). In granting dismissal the court notes that nowhere within the present claim, or the pleading history in the prior claim herein, has Mr. Carlson made any reference to the ADA, or one of its subchapters or titles. Moreover, and notwithstanding the assertions within claimant’s responsive papers that he has interposed a cause of action under *251 title II of the ADA within the claim, the pleading herein fails to cohesively recite factual allegations in support of relief under that subchapter, i.e., that Mr. Carlson is a qualified individual with a disability under the statute, and that he was excluded or denied the benefits of the services, programs or activities of a public entity by reason of his disability, and/or that he otherwise was subject to discrimination on that basis (see 42 USC § 12132). Those omissions are hardly pleading oversights, since the related federal claim expressly recites a violation of title II of the ADA as its third cause of action (see exhibit G at 15-17). The court does not view the State’s raising of the issue as part of this motion as a concession that a cause of action under ADA has been interposed; rather, its arguments simply extrapolate upon claimant’s generic references within the claim to “reasonable accommodations(s).” Those allegations will remain as part of his pleading, although divorced from any statutory claim under the ADA.
The court will also grant the State’s request for summary judgment in relation to claimant’s assignment to Gowanda, but deny relief with respect to his assignment to upper-floor cells within that facility, and the delay in effecting his transfer after his disability-based application for a reassignment was approved. In so doing, the court is mindful that matters of security, classification and transfer of inmates fall within the broad discretion of the Commissioner of Correctional Services (see Correction Law § 23 [1]; Matter of Burr v Goord, 8 AD3d 853, 854 [2004] [Commissioner possesses broad discretion in determining security classification and facility assignments, and inmate has no rights in that selection process]). The discretionary determinations of correction officials in fulfilling their responsibility for the safety, security and control of correctional facilities has been recognized as quasi-judicial in nature, and subject to absolute immunity where conducted in compliance with governing statutes and regulations (see Arteaga v State of New York, 72 NY2d 212 [1988] [addressing the filing and conduct of disciplinary proceedings by correction employees against inmates]; Tango v Tulevech, 61 NY2d 34 [1983] [county probation officer’s release of parties’ children to one parent, rather than seek court intervention, was discretionary, and immune from liability in damages]; Santangelo v State of New York, 101 AD2d 20 [1984] [actions of temporary release committee and superintendent of minimum security facility in granting temporary release of juvenile inmate were discretionary and quasi-judicial, and immune from liability in damages]).
*252 Here, the determination to classify claimant as a medium security inmate involved a matter of judgment, even if his participation in an established alcohol abuse treatment program was required as a ministerial function. While it appears undisputed Gowanda was the only male medium security facility to offer such a program, thereby compelling Mr. Carlson’s assignment to that prison, any potential to choose among multiple facilities offering an alcohol abuse treatment program would similarly have been discretionary in nature. The element of discretion precludes the recovery of damages for that determination.
In so holding the court has considered that a factual dispute exists between claimant and Richard Woodward II, the Corrections Counselor at Elmira Correctional Facility who initially assessed claimant’s program needs, on the question of whether the counselor advised Mr. Carlson that he needed to be housed in a one-floor or “flat” facility by reason of his disability, and on that basis would not be assigned to Gowanda. Accepting for purposes of this motion that the counselor did inform claimant that he needed to be assigned to a one-floor facility, that factor does not give rise of a justiciable issue of negligence. Mr. Woodward further alleged, without dispute, that the decision on where to place an inmate rested with DOCS’ Classification and Movement personnel, rather than himself as a counselor. For that reason even if the counselor had made such representations to Mr. Carlson, those comments would not have emanated from the office responsible for his placement, and would not have impacted on the discretionary immunity that office possessed in making that determination.
Conversely, the State has failed to demonstrate that decisions with respect to claimant’s housing assignments at Gowanda involved discretionary considerations that extended to his medical condition, physical handicaps and special needs. Mr. Carlson would have undergone an initial screening and risk assessment upon his arrival at that facility, including the recording of his “visible injury/injuries,” and “physical handicap (s)” (see 9 NYCRR 7013.7 [a], [b] [1], [3]). The facility would rely, in part, upon that information in determining claimant’s housing assignment (see 9 NYCRR 7013.8 [c], [e] [2]). More generally, the concept of “classification” in the assignment of inmates to appropriate housing includes by. definition a determination of special needs, again based in part upon the initial screening (see 9 NYCRR 7013.2 [a] [defining “(c)lassification”]). *253 Although Melissa Trostle, the Assistant Director of Classification and Movement for DOCS, has addressed considerations that led to claimant’s placement at Gowanda within her affidavit of April 14, 2011, her submission does not discuss the screening, risk assessment, and classification process that led to Mr. Carlson’s housing assignment once he became transferred to that facility, and the State has not otherwise addressed the matter. For that reason the court will deny dismissal of the claims of negligence in claimant’s upper-floor housing assignments at Gowanda.
An additional basis for denying summary judgment exists with respect to claimant’s housing after he sought treatment at the facility infirmary for his claimed impairment. In that regard, it is well settled that the State possesses a duty to render reasonable and adequate medical care to its inmates without undue delay (see Kagan v State of New York, 221 AD2d 7, 11 [1996]). In the court’s view, once claimant sought medical intervention for his prosthesis, decisions with respect to not only the treatment of his condition, but also whether and how he would ambulate within the facility by reason of that condition, became matters of medical care and treatment, rather than simple classification and assignment under 9 NYCRR part 7013. Under Kagan, claimant will be allowed to pursue his allegations of improper treatment in that regard.
The court does not view the filing and review of claimant’s application to transfer to another facility, or the promulgation of Directive 2614 (Reasonable Accommodation for Inmates with Disabilities [Apr. 14, 2004]), as modifying defendant’s broader duty of care in addressing his claims of disability and injury.
The court will deny summary judgment to the extent Mr. Carlson has characterized alleged failures in the State’s diagnosis and treatment of several conditions as constituting negligence, rather than or in addition to medical malpractice. “[I]t is beyond cavil that the State owes a duty to provide medical care and treatment to its prisoners, which duty has been defined in terms of both negligence . . . and medical malpractice.” (Kagan, 221 AD2d at 16 [citations omitted]). The court would caution, however, that the burden at trial of supporting such medical issues with expert proof would exist irrespective of whether the claim is framed as one for negligence or medical malpractice (see Tatta v State of New York, 19 AD3d 817, 818 [2005], lv denied 5 NY3d 712 [2005]; Duffen v State of New York, 245 AD2d 653 [1997], lv denied 91 NY2d 810 [1998]).
*254 Lastly, the court will grant summary judgment dismissing the claim to the extent based upon any defect within the stairway at Gowanda.
Based upon the above, it is hereby ordered, that defendant’s motion for partial summary judgment is granted, in part. The causes of action based upon 42 USC § 1983, state constitutional tort, the ADA, negligence in claimant’s transfer to Gowanda, and any stairway defect are hereby dismissed; and it is further ordered, that defendant’s motion for partial summary judgment is otherwise denied.

. At oral argument the State made clear that a request within its papers to amend its answer pursuant to CPLR 3025 was inadvertent, and that it was not seeking to further amend that pleading.

. A copy of the claim herein was tendered by agreement of the parties following oral argument. The claim, amended claim and proposed second amended claim appended to the motion papers all relate to an earlier claim for the same relief (claim No. 112306), which was discontinued by stipulated order (Hudson, J.), dated August 9, 2007, filed August 21, 2007.

. As in original. Likely May 22, 2007.

. The parties stipulated to allow the filing of an amended answer (see order dated Mar. 22, 2011, filed Apr. 19, 2011, Hudson, J.).

. An unsworn copy of claimant’s affidavit is also annexed to the May 25, 2011 affirmation of Lisa T. Sofferin.

. Now, the Department of Corrections and Community Supervision.

. (Carlson v New York State Dept. of Correctional Servs., US Dist Ct, WD NY, No. 6:06-CV-06621 MWP; see affidavit of Wendy E. Morcio, sworn to Apr. 14, 2011, exhibit G.)

. One cause of action addresses a search of claimant’s cell, and subsequent disciplinary proceedings, all unrelated to the claim herein.

. The fourth sub chapter (42 USC §§ 12201-12213) consists of miscellaneous provisions, notably an express declaration that the states are not immune from an action in federal or state court for ADA violations by reason of the Eleventh Amendment to the United States Constitution, and instead are subject to the same legal and equitable remedies provided for in actions against any other entity (see 42 USC § 12202). The constitutionality of that abrogation of state sovereign immunity has been affirmed, albeit under limited cir *249 cumstances, one of which is factually similar to this matter (see United States v Georgia, 546 US 151, 157-159 [2006] [discussed herein]).

. Unpublished decision and orders are available on the court’s Web site at http://www.nyscourtofclaims.state.ny.us.