■ CITY OF NEW YORK, Respondent, v BROOKLYN COOPERATIVE MEAT DISTRIBUTION CENTER, INC., Appellant. — Judgment, Supreme Court, New York County (Kristin Booth Glen, J.), entered March 29, 1983, which granted judgment in favor of the plaintiff in the sum, including interest and costs, of $5,156,881.53, is unanimously reversed, on the law, judgment is vacated and plaintiff's motion for summary judgment is denied, without costs. ¶ Appeal from the order of Supreme Court, New York County (Kristin Booth Glen, J.), entered February 15, 1983, granting plaintiff's motion for summary judgment, dismissed without costs, as subsumed by the judgment of March 29, 1982. ¶ The defendant Brooklyn Cooperative Meat Distribution Center, Inc., is a corporation that was organized by members of the meat and poultry industries. On or about December 11, 1969, the plaintiff City of New York and defendant entered into a written agreement, whereby the plaintiff authorized defendant to build a new Brooklyn wholesale meat market, consisting of four buildings, on land owned by plaintiff. The pertinent terms of this agreement are that: (a) the plaintiff gave the defendant a 30-year lease; (b) pursuant to this lease, the defendant was to construct the market and the plaintiff was to reimburse defendant for all approved construction costs; and, (c) defendant's obligation to pay rent to plaintiff was to commence "on the earlier of the following dates": (1) the date on which the construction work was "substantially completed" and the market was "suitable for the purpose of * * * letting" or, (2) the date when the defendant starts "to use these premises * * * in connection with its business". ¶ Construction was commenced on the site, which is located on the waterfront at Gravesend Bay, and it continued until about September, 1975, when the contractors walked off the job, with the market unfinished. On the one hand, defendant alleges that the contractors stopped working as a consequence of the plaintiff discontinuing its funding of the construction costs, due to New York City's mid-1970's fiscal crisis, while, on the other hand, plaintiff alleges that the defendant was at fault for causing the halt. ¶ After this work stoppage had lasted for more than a year, about 20 meat dealers, who operated out of Brooklyn's Fort Greene Market, formed a new corporation, named Market Operating Corporation (MOC), for the purpose of raising private funds to complete this market. MOC, it seems, is a separate entity, and has no direct or contractual relationship with defendant, even though some of the members of the board of directors and principals of defendant are participating in MOC. Once MOC appeared on the scene, defendant claims it ceased to operate as an active corporation. ¶ With almost $900,000 that it had raised privately, MOC

completed construction of three buildings on the subject site. On October 1, 1977, MOC claims to have occupied two of the buildings because its members, and those persons in the industry affiliated with it, faced imminent eviction from the Fort Greene facility. Since plaintiff was not receiving any rent, it started eviction proceedings against the tenants in these buildings; but, plaintiff suspended such proceedings when it began lease negotiations with MOC, which resulted in a letter of intent between plaintiff and MOC for a three-year lease with a two-year renewal clause. In fact, plaintiff acknowledges receiving rent payments from MOC. ¶ Plaintiff instituted the instant action in 1981. The complaint seeks $4,185,831.41 in unpaid rent for a period extending from October 1, 1977 to November 13, 1980. This rent is allegedly due from the defendant, pursuant to the terms of the 1969 lease agreement mentioned *supra*. Defendant answered with a general denial. Subsequent to this joinder of issue, the plaintiff moved for summary judgment, which was granted by Special Term. We disagree. ¶ The trial court found that the affirmation by defendant's attorney, submitted in opposition to summary judgment, had no probative value. However, it appears from a reading of the documentary proof that this attorney affirmant had personal knowledge of the facts and this may be sufficient to defeat plaintiff's motion for summary judgment (*Bank Leumi Trust Co. v Collins Sales Serv.,* 65 AD2d 735, affd 47 NY2d 888). Further, where such affirmation appears to be bolstered by documentary proof that is before the court, the affirmation should be considered in determining if issues of fact exist (*Federal Deposit Ins. Corp. v Kassel,* 72 AD2d 787). ¶ Furthermore, the record reveals a number of serious questions of fact to be determined here. For example: Did the plaintiff's decision in 1975 to stop providing reimbursement for the cost of construction prevent the 1969 lease agreement from ever becoming operative? Did the plaintiff, by negotiating and receiving rent from MOC, in fact recognize MOC and not the defendant, as the tenant? "[S]ummary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" (*Moskowitz v Garlock,* 23 AD2d 943, 944; *Rotuba Extruders v Ceppos,* 46 NY2d 223). Concur — Kupferman, J. P., Sandler, Ross, Silverman and Alexander, JJ.