OPINION OF THE COURT
Joseph J. Maltese, J.
The motion of the defendant, Weeks Marine, Inc., for an or *848 der dismissing the plaintiffs’ complaint on the ground that it is time-barred is denied. This court holds that the three-year statute of limitations in CPLR 214 (4) does not commence in an action for real property damage caused by the loss of “lateral support” due to the defendant’s drilling, blasting and dredging of an adjacent waterway until the damage is visible.
Facts
The plaintiffs, Atlantic Express Transportation Corp. and Midway Leasing Inc., commenced this action by serving and filing a summons with notice on June 9, 2006. Subsequently, Weeks appeared through its attorneys on June 14, 2006 and demanded a copy of the complaint be served. On or about July 10, 2006 the plaintiffs served a verified complaint alleging negligence and strict liability seeking to recover for property damage on their premises located at 7 North Street, Staten Island, New York that faces the Kill van Kull channel which forms a state border between Staten Island (Richmond County), New York and Hudson and Union Counties in New Jersey. In February 2000 the U.S. Army Corps of Engineers contracted with Weeks to deepen the Kill van Kull. Weeks drilled, blasted and dredged the Kill van Kull during 2000-2001 as part of the “Navigation Improvement Project,” so that ships and barges may traverse more easily through the channel.
Atlantic Express contacted Weeks by telephone on March 30, 2001 to advise that it sustained damage to its premises in the form of window and roof leakage as a result of the drilling, blasting and dredging in the Kill van Kull by Weeks’ personnel.
Weeks informed Atlantic Express by a letter dated October 1, 2001 that the blasting activities in the Kill van Kull ended on September 13, 2001, and that its seismic expert concluded that the blasting did not cause that damage to the plaintiffs’ property.
In response to an additional complaint made by the plaintiff, Weeks generated a vibration complaint report dated June 23, 2003. The report included the observations of Weeks’ employees, Jeffrey Walker and Joshua Howe, that described damage to Atlantic Express’ property as: “blacktop roadway sinking into water. Approx 2 weeks ago hole appeared in blacktop.”
On October 28, 2003, Atlantic Express wrote to its attorneys referencing a previous letter dated August 8, 2003 directed to Jeffrey Walker inquiring as to the status of its complaint. The letter states in pertinent part:
*849 “the damages to our property are:
“1. Shifting of rock and soil causing erosion and sinking of blacktop on walkway along gated area by waterway.
“2. Cracks on building exterior
“3. Collapse of pier
“4. Office ceiling cracks & leaks
“- President’s Office — Domenic Gatto
“- CFO’s Office-Nat Schlenker
“- COO’s Office-Jerry Dente
“5. Wood molding separating from the walls in Mr. Gatto’s office.
“6. Building entrance doorway leaking, wallpaper peeling off walls.
“7. Underground pipes, drywell and sewer damage unknown to us at this time.”[1]
However, while the aforementioned letter specifically references a shifting of rock and soil accompanied with the sinking of blacktop, the plaintiff contends that it did not have notice until late in 2005 of the damage to the riprap revetment. The expert affidavit of David B. London, supplied by the plaintiffs, states that a riprap revetment is a mixture of large and small stones along the slope of the plaintiffs’ property that borders a waterway, such as the Kill van Kull, which is used to protect the slope from erosion by dissipating the impact of waves and wakes against the shoreline. In his affidavit, the plaintiffs’ expert avers that damage to the revetment could manifest itself in the form of large holes, the type of which existed in the plaintiffs’ parking lot.
In their response to individual interrogatories, the plaintiffs provided the following information:
“3. Plaintiffs complaint alleged ‘damage and injury’ to their ‘property . . . and surrounding sidewalks, roadways, piers, and adjourning land and infrastructure.’ State the date plaintiffs first discovered any of the alleged damage to their property.
“There are numerous different types of damage, which were discovered at different times. These categories of damage are identified in the ‘Definitions’ section to these Answers to Interrogatories. As to the Rip Rap Damage, Plaintiffs only discovered this *850 through their expert in or about July of 2006, shortly after their expert’s advising them of the damage. As to the Curbing Damage and the Parking Lot Damage, this was first discovered during the summer of 2004. As to the Cracking Damage, this has been ongoing since 2001 and continues with each new effort to widen the channel by blasting.
“4. State the date plaintiffs first observed any of the alleged property damage to their property. . . .
“As to the Rip Rap Damage, Plaintiffs never actually observed the displacement of the rip rap slope, since it was underwater in the Kill Van Kull waterway, but were advised by their expert in or about July of 2006 that it had occurred. As to the Curbing Damage and the Parking Lot Damage, this was first observed during the summer of 2004. As to the Cracking Damage, the roof and walls have been cracking since the blasts began in about 2001. New cracks appear each time there is blasting.”[2]
The plaintiffs contend that the full extent of the blasting damage caused by Weeks manifested itself over time. As such, it is the plaintiffs’ position that the earliest notice it had of the damage caused by Weeks was in 2004.
The defendant argues that the plaintiffs first had notice that Weeks may have caused damage to their property in 2001 not 2004. As a consequence, the defendant contends that the plaintiffs’ 2006 lawsuit is time-barred because the statute of limitations would have expired in 2004, three years after the alleged 2001 damage.[3]
Discussion
The issue before the court is when does a cause of action for negligence and strict liability commence — at the first sign of damage to real property, or when more serious damage is manifested. In either event the plaintiffs’ claims will be limited by the three-year statute of limitations of CPLR 214 (4).
In opposing this motion, Atlantic Express’ counsel cites to the Appellate Division, First Department, decision in Mark v Eshkar,[4] which involved property damage caused by renovations to a party wall shared by two property owners. In Mark the *851 plaintiff first discovered small cracks in the party wall in 1984 that were attributed to vibration caused by the construction next door. The defendant paid the plaintiff for that damage and the issue was thought to have been resolved. However, five years later larger cracks became visible in the same wall. The plaintiff alleged that these cracks were the result of a weakening of the integrity of the foundation supporting the party wall. The trial court held that the negligence action concerning the alleged structural damage was time-barred pursuant to the three-year statute of limitations.
However, in overturning the trial court, the First Department held:
“in an action for damage to a building resulting from the loss of lateral support, the cause of action accrues when damages are sustained, rather than at the time of the removal of the lateral support. And where the wrong consists of the disturbance of the surface, the statute of limitations does not commence to run until the damage has become visible through the development of injuries to the surface of the plaintiffs land.”[5]
Here, Atlantic Express argues that the relatively small structural damage initially complained of in 2001 is analogous to the small cracks first discovered by the plaintiff in Mark, while the more significant damage caused by the loss of the integrity of the revetment is comparable to the later structural cracks discovered in Mark. This court agrees with that interpretation, and adopts the holding of the Appellate Division, First Department, in Mark. Consequently, Atlantic Express is time-barred from asserting any claims it may have had against Weeks concerning the alleged damage first complained of in 2001, but not as to the damage manifested thereafter.
This court cannot accept Atlantic Express’ contention that it first became aware of the alleged defects to the revetment in 2004. The evidence presented in Weeks’ vibration complaint report demonstrates that the plaintiff had knowledge of the damage to the blacktop roadway two weeks before June 23, 2003, which was June 9, 2003. Hence, Atlantic Express had until June 9, 2006 to file its lawsuit alleging damage to its property, which it did. Accordingly, the plaintiffs’ claims for damage to their building, windows and roof that occurred in 2001 is time-barred. However, the damage to the surrounding side *852 walks, roadways, piers and adjoining land and infrastructure did not manifest itself until at least June 9, 2003, and consequently is not time-barred by this action that commenced on June 9, 2006, three years after the discovery of the damage in accordance with CPLR 214 (4).
Counsel for Weeks argues that under Mark, liability is limited only to those instances where a defendant physically comes into contact with a support of the plaintiffs structure. This court does not accept counsel’s argument that the Appellate Division, First Department, required physical contact as an element to demonstrate loss of lateral support. The hole in Atlantic Express’ blacktop roadway is the very manifestation of damage to the plaintiffs land anticipated by Mark. Whether the blasting by Weeks in the Kill van Kull caused the removal of the lateral support to the revetment adjacent to the land of Atlantic Express is a question of fact to be placed before a jury.
Conclusion
A motion for summary judgment must be denied if there are “facts sufficient to require a trial of any issue of fact” (CPLR 3212 [b]). Granting summary judgment is only appropriate where a thorough examination of the merits clearly demonstrates the absence of any triable issues of fact. “Moreover, the parties’ competing contentions must be viewed in a light most favorable to the party opposing the motion.”[6] Summary judgment should not be granted where there is any doubt as to the existence of a triable issue or where the existence of an issue is arguable.[7] As is relevant, summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law.[8] On a motion for summary judgment, the function of the court is issue finding, and not issue determination.[9] In making such an inquiry, the proof must be scrutinized carefully in the light most favorable to the party opposing the motion.[10]
*853 After a thorough review of the record and viewing the facts in the light most favorable to the nonmoving party, this court cannot conclude as a matter of law that Atlantic Express’ complaint is time-barred under the three-year statute of limitations.[11]
Accordingly, it is hereby ordered that defendant’s motion for summary judgment is denied in its entirety.

. Defendant’s affirmation in reply, exhibit I.

. Defendant’s affirmation in reply, exhibit K.

. CPLR 214 (4).

. 194 AD2d 356 (1st Dept 1993).

. Id. at 357 (citations omitted).

. Marine Midland Bank v Dino & Artie’s Automatic Transmission Co., 168 AD2d 610, 610 (2d Dept 1990) (internal quotation marks omitted).

. American Home Assur. Co. v Amerford Inti. Corp., 200 AD2d 472 (1st Dept 1994).

. Rotuba Extruders v Ceppos, 46 NY2d 223 (1978); Herrin v Airborne Frgt. Corp., 301 AD2d 500 (2d Dept 2003).

. Wiener v Ga-Ro Die Cutting, 104 AD 2d 331 (1st Dept 1984), affd 65 NY2d 732 (1985).

. Glennon v Mayo, 148 AD2d 580 (2d Dept 1989).

. CPLR 214 (4).