■ LOFRACO BELGIUM, Also Known as FRONT ROW ENTERTAINMENT, Respondent, v MATEO PRODUCTIONS, INC., et al., Defendants, and KON LIVE TOURING, Also Known as KONVICT MUZIK, Appellant. [29 NYS3d 312]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 9, 2014, which denied defendant Kon Live Touring's (KLT) motion for summary judgment dismissing the complaint as against it, and granted plaintiff's cross motion for summary judgment on its breach of contract claim as against KLT, modified, on the law, to deny plaintiff's cross motion, and otherwise affirmed, without costs.

Plaintiff Lofraco Belgium (also known as Front Row Entertainment) contracted with KLT for an artist known as Akon to perform at a concert in Brussels, Belgium on December 9, 2009. Pursuant to the written contract between plaintiff and KLT, plaintiff paid $125,000 to KLT's agent, defendant American Talent Agency (ATA). However, on the morning of the concert plaintiff was informed that Akon would not be performing because he was ill.

The relevant contract contained a provision entitled "NON-PERFORMANCE," which stated that Akon's inability to perform due to "sickness or accident" would be considered force majeure, for which Akon would not be subject to liability; but that money would be returned for nonperformance which was not within the scope of force majeure.

KLT moved for summary judgment dismissing the breach of contract claim as against it based on the contract's force majeure clause. Plaintiff cross-moved for summary judgment on its breach of contract claim.

In support of its motion, KLT, submitted Akon's testimony that he did not perform at the scheduled concert due to illness, medical records from a November 16, 2009 surgery, and Akon's surgeon's testimony that the symptoms Akon described were consistent with tearing of scar tissue following the surgery he had undergone a few weeks before the concert date. KLT argued that, pursuant to its contract with plaintiff, it therefore

had no obligation to return the monies paid for Akon's appearance. However, KLT submitted no other evidence to substantiate Akon's claim that he was ill, such as the hospital records of his visit to an emergency room where he claimed he was given antibiotics and painkillers. Nor did it explain its failure to submit the hospital records. Since any such records are exclusively within the control of Akon and KLT, which is solely owned by Akon, this omission renders KLT's proof of Akon's illness insufficient to support summary judgment. In short, KLT failed to meet its burden on the motion (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]).

The court properly considered plaintiff's untimely cross motion, since it addressed the same issue that KLT addressed in its motion, i.e., whether Akon was ill (*see Lapin v Atlantic Realty Apts. Co., LLC*, 48 AD3d 337 [1st Dept 2008]). The record does not support KLT's contention that plaintiff's motion was also improper because the court had ordered plaintiff to wait until after KLT had deposed plaintiff's principals before seeking summary judgment.

However, contrary to the dissent's contention, plaintiff did not satisfy its burden on the cross motion. While the dissent notes that plaintiff established it paid $125,000 to secure Akon's performance, that Akon never performed, and that the $125,000 was never repaid to plaintiff, plaintiff, in its cross motion for summary judgment, was required to establish that Akon was able to perform at the concert and was not unable to do so due to sickness. Instead, plaintiff merely pointed to gaps in KLT's evidence—the missing medical records that would have proven Akon was ill, and thus its cross motion was improperly granted (*see Torres v Merrill Lynch Purch.*, 95 AD3d 741 [1st Dept 2012]).

The dissent merely points to additional gaps in KLT's evidence, such as proof of travel arrangements to demonstrate Akon intended to travel to Brussels, and notes the limited value of the affidavit of Akon's surgeon. However, these gaps do not equate to plaintiff meeting its burden to establish an absence of a genuine issue of fact as to whether Akon was ill. Plaintiff acknowledges that it lacks any documentary evidence refuting that Akon was unable to perform, and has no evidence that he was physically capable of performing. The dissent, like the Supreme Court, appears to completely dismiss the value of Akon's deposition testimony, yet it is "not the court's function on a motion for summary judgment to assess credibility" (*Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]).

The dissent also stresses that Akon did not have the medical

records at the time of his deposition, that he failed to produce additional medical records in discovery, and that KLT was unable to obtain the records, which may be unavailable. This lack of additional medical evidence to support Akon's force majeure defense is why we find that KLT failed to meet its burden on its motion. At the same time, plaintiff also failed to meet its burden of proof for summary judgment. Thus, a trial is required. Concur—Tom, J.P., Moskowitz and Richter, JJ.

Andrias, J., concurs in part and dissents in part in a memorandum as follows: I agree with the majority that Supreme Court properly denied the motion of defendant Kon Live Touring (KLT) for summary judgment dismissing plaintiff's breach of contract claim against it. I also agree with the majority that the court properly considered plaintiff's untimely cross motion for summary judgment on that claim since it addressed the same issue that KLT addressed in its motion, namely, whether the artist known as Akon was unable to perform due to sickness, and therefore relieved of liability by the contract's force majeure clause. However, I disagree with the majority insofar as it holds that the grant of plaintiff's cross motion for summary judgment on its breach of contract claim was in error because plaintiff failed to sustain its prima facie burden of establishing that Akon was not too sick to perform. Accordingly, I dissent in part.

Pursuant to an August 7, 2009 agreement, KLT agreed to furnish plaintiff with Akon's services for a concert in Belgium scheduled for October 16, 2009. To secure Akon's performance, plaintiff paid $125,000 to Akon's booking agent. Due to a "scheduling conflict" on Akon's part, the concert was rescheduled for December 9, 2009. However, at 2:00 a.m. on the day of the concert, plaintiff was advised by Akon's booking agent that Akon was ill and would not appear.

KLT moved for summary judgment dismissing plaintiff's breach of contract claim based on the contract's force majeure clause, which it raised as an affirmative defense. The clause states: "If ARTIST is unable to perform in the event of sickness or accident then this will be considered 'Force Majure' [sic] by ARTIST and ARTIST shall not be subject to any liability . . . Monies will be returned for any nonperformance that is not covered under the scope of force 'Force Majure' [sic]."

"The purpose of a *force majeure* clause is to limit damages in a case where the reasonable expectation of the parties and the performance of the contract have been frustrated by circumstances beyond the control of the parties" (*United Equities Co. v First Natl. City Bank*, 52 AD2d 154, 157 [1st Dept 1976], *affd*

41 NY2d 1032 [1977]). "[W]hen the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure" (*Route 6 Outparcels, LLC v Ruby Tuesday, Inc.*, 88 AD3d 1224, 1225 [3d Dept 2011] [internal quotation marks omitted]).

On its motion for summary judgment, KLT bore the burden of establishing its force majeure defense (*see Latha Rest. Corp. v Tower Ins. Co.*, 285 AD2d 437 [1st Dept 2001]; *see also Phillips Puerto Rico Core, Inc. v Tradax Petroleum Ltd.*, 782 F2d 314, 319 [2d Cir 1985]). As the majority finds, KLT did not sustain its burden in that it failed to submit any objective evidence to substantiate Akon's self-serving claim that he was unable to perform due to sickness, such as the hospital records of his alleged visit to an emergency room where he claimed he was given antibiotics and painkillers, even though those records were exclusively within the control of Akon and KLT, which is solely owned by Akon.

Nevertheless, the majority finds that plaintiff did not satisfy its burden of proof on its cross motion because it failed to establish that Akon was able to perform or that he was not unable to perform due to sickness. On the record before us, I cannot agree. As shown below, plaintiff's submissions established its prima facie entitlement to summary judgment and Akon failed to produce any objective evidence supporting his force majeure defense, including the aforementioned medical records relating to the alleged treatment of the condition that purportedly rendered him too sick to perform.

To recover for breach of contract, it was incumbent on plaintiff to demonstrate that it performed its obligations under the contract, that KLT failed to perform, and that it was damaged by KLT's breach (*see Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). It is undisputed that plaintiff paid the $125,000 it was required to pay in order to secure Akon's performance, that Akon never performed, and that the $125,000 was never repaid to plaintiff, thereby establishing KLT's breach.

Plaintiff's submissions also established that there was no objective evidence that Akon was too sick to perform on December 9, 2009 and that the evidentiary materials of record were insufficient to raise a material issue of fact as to KLT's force majeure affirmative defense. Among other things, the record shows that: (i) on November 16, 2009, Akon underwent an elective medical procedure, even though he was scheduled to perform in Belgium a mere three weeks later; (ii) after the

procedure, Akon recuperated at home for about two weeks and was "feeling good"; (iii) a few days prior to the Belgium performance scheduled for December 9, 2009, Akon was well enough to travel to Puerto Rico for a paid promotional event; (iv) although Akon claims that he immediately fell ill upon his arrival on the island, he did not seek any medical treatment, remained there for two days, and made his personal appearance; (v) there was no proof, such as airline reservations or tickets or other travel arrangements, that would demonstrate that Akon had ever intended to travel to Brussels; (vi) while Akon claimed that he received medical treatment upon his return to Atlanta, KLT failed to produce any medical, prescription, emergency room or hospital records during discovery to substantiate that claim; and (vii) Akon did not see the physician who performed his surgery until December 22, 2009, more than two weeks after he allegedly fell ill in Puerto Rico, at which time he received lymphatic massage therapy rather than treatment for his alleged illness. Contrary to the view of the majority, these undisputed facts, which undermine Akon's claims, constitute more than "gaps" in KLT's proof. Rather, they demonstrate a complete absence of proof to support Akon's force majeure defense, which is based solely on Akon's self-serving claims that he was too sick to perform.

In holding otherwise and finding that plaintiff failed to satisfy its burden of proof, the majority faults plaintiff for its inability to produce documentary evidence to refute Akon's unsubstantiated claim that he was too sick to perform on December 9, 2009. However, the only post surgery medical records produced by defendant show that Akon saw his surgeon for massage therapy on December 22, 2009. While Akon testified that he received emergency room treatment at Piedmont Hospital in Atlanta upon his return from Puerto Rico, where he was allegedly given a prescription for painkillers and antibiotics, when asked at his deposition if he had any documentation as to that visit, he responded, "No, I don't have the documents." While defendant's counsel stated that "we have been endeavoring to get all medical records[,] [a]nd should we obtain them we will produce them," defendant never produced the records.

Defense counsel's only explanation for this failure was that the request was not made until 2012, so it should be no surprise that records for a December 2009 visit were no longer available. However, when asked by the court at oral argument whether he had anything from the hospital to show that the records were destroyed, counsel evasively responded, "We don't

have them." Thus, the majority would require plaintiff to produce medical records which defendant failed to produce during discovery, an unreasonable [and more likely impossible] burden, given that those records, as the majority concedes, were solely within defendant and Akon's control and, according to defendant, no longer exist.

The uncorroborated assertions of Akon and the affidavit of his surgeon, which is based solely on those assertions, are insufficient to create genuine issues of fact necessary to defeat a motion for summary judgment (*see Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]; *Charter One Bank, FSB v Leone*, 45 AD3d 958, 959 [3d Dept 2007] [self-serving and conclusory allegations by the defendant that she made timely payments subsequent to the date of the default or that the plaintiff had mismanaged her escrow account or that an accord and satisfaction had been reached did not raise a genuine issue of fact]). The surgeon did not state that he personally observed or treated Akon for any of the post surgery symptoms Akon purports to have experienced while he was in Puerto Rico during the first week of December 2009. Nor did he state that he examined any medical records evidencing same. While Akon testified that it was the surgeon who told him to go to the emergency room, the surgeon did not corroborate that or state that Akon contacted him upon his return to Atlanta with respect to the symptoms he allegedly experienced in Puerto Rico. Rather, the surgeon stated that the information as to Akon's alleged symptoms was obtained through his review of Akon's deposition transcript. In any event, although the surgeon did state that Akon's purported symptoms were theoretically consistent with the procedure he underwent, or "an ordinary sickness that passes with time," he did not opine that these symptoms would have rendered Akon too sick to perform on December 9, 2009. Nor did KLT submit proof that any other physician observed any of those symptoms or that they prevented Akon from performing.

Accordingly, I would affirm the order on appeal which denied KLT's motion and granted plaintiff's cross motion for summary judgment on its breach of contract claim against KLT.