| |
|---|
| **Torres v 716-720 W. 180th St. Hgts. Assoc. LLC** |
| 2025 NY Slip Op 30785(U) |
| March 10, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 155045/2022 |
| Judge: Lynn R. Kotler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** HON. LYNN R. KOTLER | **PART** | **08** |
| *Justice* | | |

-------------------------------------------------------------------X

GRICELDA TORRES

                         Plaintiff,

          - v -

716-720 WEST 180TH STREET HEIGHTS ASSOCIATES
LLC,

                      Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 155045/2022 |
| **MOTION DATE** | 12/20/2024 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38

were read on this motion to/for                 **JUDGMENT - SUMMARY**        .

     This is a negligence action to recover for personal injuries sustained by plaintiff Gricelda Torres ("Torres") as a result of a ceiling collapse that occurred inside plaintiff's residence located at 716 West 180th Street, Apt. 2, New York, New York. Torres now moves for summary judgment against defendant 716-720 WEST 180TH ST HEIGHTS ASSOCIATES LLC ("Heights") on the issue of liability. Heights opposes the motion arguing that they did not have actual or constructive notice of the defect that caused the injury.

     By this court's Order dated October 30, 2024, the deadline to file summary judgment motions was extended 60 days from the date of the order. The instant motion was submitted on December 20, 2024 and therefore plaintiff's motion is timely.

     For the reasons that follow, plaintiff's motion for summary judgment on liability is granted.

[* 1]

Facts

Torres has lived in her apartment at 716 West 180th Street, Apt. 2, New York, NY, which is owned by the defendant, for approximately 20 years. On March 3, 2022, the kitchen ceiling collapsed in her apartment causing her to suffer personal injuries.

Torres has submitted a copy of the building superintendent Rigoberto Jimenez's deposition transcript. Jimenez testified at his deposition that he repaired the ceiling and believed the cause of the leak was a radiator leaking from the apartment above. Jimenez had also repaired the sheet rock and paint of the ceiling of Torres' hallway, bedroom, and parts of the bathroom in the past, but could not recall how many times. Jimenez testified that he believed those leaks were the result of a broken shower drain in apartment 22, which is directly above Torres' apartment.

Prior to the kitchen ceiling collapse, a bedroom ceiling had collapsed, and the hallway ceiling had collapsed twice. Jimenez admitted he was aware of the hallway ceiling collapse, which Torres claims took six months to repair. At his deposition Jimenez was shown a photograph of the collapsed hallway ceiling but was unable to identify if it was a hallway in the apartment building.

Jimenez further testified that his job responsibilities included receiving notifications from Housing Preservation and Development ("HPD") of complaints and violations. HPD's complaint history shows four complaints filed for plaintiff's apartment, number two. On 10/15/2021 there was a complaint for a collapsing ceiling in the bedroom. On 02/06/2022 there was a slow leak in the wall/ceiling of the living room. On 03/10/2022 there were two complaints, one for a damp spot in the bedroom wall/ceiling and one slow leak in the wall/ceiling of the kitchen. Jimenez confirmed that he receives email notifications of all HPD complaints made at the apartment building.

[* 2]

Jimenez testified that he could not recall Torres informing him of the kitchen leak, but when asked if he was testifying that she never told him about it he responded "no". He also stated that he did not recall receiving an email notification about it from the HPD but when asked if it was possible that he or his office missed any of those emails and left the problem unaddressed he responded "No. Always the office makes a confirmation with me or I make a confirmation with the office."

On December 14, 2023, plaintiff Torres testified at her deposition the following:

Q. That's what I am asking you. Where was the leak that happened three months before your accident?
A. Exactly where the ceiling fell.
Q. So the leak that happened three months before your accident was in the kitchen ceiling in the same exact spot where the kitchen ceiling fell on you when your accident happened?
A. Yes. Can I add something?

Plaintiff described the incident and said, "the ceiling starting to push forward and just like when walls start like growing or getting almost swollen and breaking the paint on them and then that's when the water started coming." Torres further testified that the kitchen ceiling had a history of leaks leading up to the collapse. The first leak was allegedly three months prior to the accident. Torres further testified that she then went to Jimenez' apartment in the building, informed him of the leak and that he told her that he would come to the apartment to look at the leak but never went. Torres also called 311 to report the leak.

Torres testified that the kitchen ceiling leaked two times weeks prior to the collapse on March 3, 2022, but she did not remember the exact dates. Both times Torres went to Jimenez' apartment to let him know but he was not home.

The final leak occurred on the morning of the collapse, March 3, 2022. That day, Torres saw Jimenez on the street and asked him to inspect the leak and Jimenez responded "yea, well, I

am really busy, but as soon as I have a moment I will go." Jimenez did not go to the apartment that day the ceiling collapsed on plaintiff.

Discussion

On a motion for summary judgment, the proponent bears the initial burden of setting forth evidentiary facts to prove a prima facie case that would entitle it to judgment in its favor, without the need for a trial (CPLR 3212; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If the proponent fails to make out its prima facie case for summary judgment, however, then its motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993]).

Granting a motion for summary judgment is the functional equivalent of a trial, therefore it is a drastic remedy that should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1977]). The court's function on these motions is limited to "issue finding," not "issue determination" (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957])."In general, to impose liability for an injury caused by a ceiling collapsing 'because of a leak, a plaintiff must show that the defendant had prior notice, actual or constructive, of the leak and that the leak was never repaired'" (*Ellisy v Eklecco, LLC*, 56 AD3d 517 [2d Dept 2008] *quoting Figueroa v Goetz*, 5 AD3d 164, 165 [1st Dept 2004]).

Actual notice can be shown where the defendant was aware of the leak for multiple months and the leak was not properly remedied (*Dunn v 6-8 St. Nicholas Realty Corp.*, 204 AD3d 466 [1st Dept 2022]). Constructive notice can be established when the defect is "visible and apparent and it must exist for a sufficient length of time prior to the accident to permit

defendant's employees to discover and remedy it" (*Hayes v Riverbend Hous. Co., Inc.*, 40 AD3d 500 [1st Dept 2007] *quoting Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]). "Mere notice of a general or unrelated problem is not enough; the particular defect that caused the damage must have been apparent" (*Hayes*, 40 AD3d at 500). Constructive notice can also be established when there is a recurring dangerous condition which is routinely left unaddressed by the defendants (*Ferguson v City of New York*, 210 AD3d 527, 529 [1st Dept 2022]).

Torres contends that she established her prima facia case of negligence against Heights as Heights had both actual and constructive knowledge of the leak that caused her accident. Heights disagrees and claims that Torres failed to establish the "particular defect" that caused the injury and therefore did not establish as a matter of law that it had actual or constructive notice. Further, Heights argues that even though the condition existed for months, it was not sufficient to satisfy the recurring dangerous condition doctrine as there is a question of fact as to whether the defendant routinely left the problem unaddressed.

Torres further argues that Heights had actual knowledge of the leak from the numerous complaints she made in the months prior to the collapse. In *Dunn*, the plaintiff was entitled to summary judgment when he was able to show that the defendant had actual notice of the defect that caused the injury and that the defect was not repaired (204 AD3d at 466). The plaintiff demonstrated that he had complained to multiple employees and that the leak had existed for six months, but the defendant never properly remedied the leak (*id.*). The defendant failed to raise a genuine issue of fact, arguing "that the collapse was related to a different leak in the same location; however, this assertion was based solely upon an unsupported statement allegedly made by a building superintendent to plaintiff's case manager" (*id.* at 467).

Like in *Dunn,* the plaintiff in *Toussaint v Ocean Ave. Apt. Assoc., LLC* was entitled to summary judgment when it was able to show that defendants had actual knowledge of a recurring leak in the bathroom ceiling (144 AD3d 664, 665 [2d Dept 2016]). Repairs had been performed on the ceiling four to five times, but the leak persisted, and three days prior to the incident the plaintiff had informed the superintendent of the building that the ceiling was leaking again and that a hole had developed (*id.*). The defendants failed to raise a triable issue of fact and summary judgment was granted (*id.*).

The Court agrees with plaintiff. Here, Heights had actual knowledge of the reoccurring leak and never properly remedied the cause. While the Building Superintendent Jimenez testified that he could not recall Torres telling him about the leak, he did not deny that the leakage occurred. Moreover, Jimenez testified that any violation reported to the HPD would get emailed to him and the building office so none of the violations are missed. Despite being informed by both the HPD and Torres, the source of the kitchen ceiling leak was never properly remedied by Heights or their agents in the three months between the original leak and the ceiling collapse.

Furthermore, Heights does not even dispute the fact that they were on notice of the issue, only that they were not on notice of the "particular defect". In their Affirmation in Opposition, Heights argues:

> [A]ll plaintiff did was provide the defendants with notice of a general problem – a leaky kitchen ceiling. She did not identify any particular injury-causing defect. Because of this, plaintiff has not established that the injury-causing defect was visible, the injury-causing defect was apparent, when the injury-causing defect came into existence, or for how long the injury- causing defect existed prior to her accident.

Heights relies on *Figueroa*, arguing that the principals therein require the plaintiff to establish as a matter of law the source of the defect. Heights argues that Torres must not only

identify that a leak is occurring in her apartment but also must establish where specifically the leak originated from.

In *Figueroa*, the First Department reasoned that summary judgment for the defendant should have been granted because there was "no prior notice of ceiling cracks or, indeed, of any water stains in the subject ceiling" (5 AD3d at 164). *Figueroa* is distinguishable, as the "plaintiff's testimony confirm[ed] that there were no prior leaks in [the] apartment" (*id.* at 165). The principals of *Figueroa* do not indicate that the specific source of the leak must be identified, as Heights asserts. Neither *Dunn* nor *Toussaint* required the plaintiff to show the source of the leak to be entitled to summary judgement, only that the defendant was on actual notice that a leak existed and that the leak was not properly remedied.

Heights also argues that there is a question of fact as to if the condition was "routinely left unaddressed". This conclusory statement is insufficient to raise a triable issue of fact. It is undisputed that Heights had been made aware of the leaky ceiling three months before the collapse, by both Torres and the HPD notification, and failed to remedy the issue. Heights has failed to raise a triable issue of fact on any of these assertions and even concede they were generally aware of the leak. On this record, plaintiff has established her entitlement to summary judgment on the issue of liability.

In light of the foregoing, defendant's remaining arguments that they did not have constructive notice and that the conditions for the recurring dangerous condition doctrine are denied as moot.

**Conclusion**

Accordingly, it is hereby

**ORDERED** that plaintiff's motion for summary judgement on the issue of liability is granted.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby denied and this constitutes the decision and order of the court.

|  |  |  |
|---|---|---|
| **3/10/2025**<br>**DATE** |  | _____<br>LYNN R. KOTLER, J.S.C. |

CHECK ONE:    [ ] CASE DISPOSED    [X] NON-FINAL DISPOSITION

                 [X] GRANTED    [ ] DENIED    [ ] GRANTED IN PART    [ ] OTHER

APPLICATION:    [ ] SETTLE ORDER    [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:    [ ] INCLUDES TRANSFER/REASSIGN    [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE