Goberdhan v Cornell Univ. (2025 NY Slip Op 51015(U))

[*1]

Goberdhan v Cornell Univ.

2025 NY Slip Op 51015(U)

Decided on June 23, 2025

Supreme Court, Nassau County

Kapoor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 23, 2025
Supreme Court, Nassau County

Tirbhawan Goberdhan, Plaintiff,

against
Cornell University, CORNELL COLLEGE OF VETERINARY MEDICINE, CORNELL RUFFAN EQUINE SPECIALISTS, DR. SAMUEL HURCOMBE BSC BVMS MS DACVIM, AND "JOHN DOES 1-5", Defendants.

Index No. 610096/2019 

 

Sarika Kapoor, J.

NYSCEF docs. 58-103 were read and considered in deciding these motions.
Relief Requested
Motion Seq. 003: Defendant, Dr. Samuel Hurcombe BSC, BVMS, MS DACVIM's ("Dr. Hurcombe") moves for summary judgment dismissing the complaint.
Motion Seq. 004: Defendants, Cornell University, Cornell College of Veterinary Medicine, and Cornell Ruffan Equine Specialists' (together "Cornell") move for summary judgment dismissing the complaint.

Background

The action arises from a veterinary malpractice claim concerning the plaintiff, Tirbhawan Goberdhan's (the "plaintiff") horse, "Teri-O' Geri" ("the horse"). The horse was owned by the plaintiff and, at all pertinent times, its trainer was non-party, Randi Persaud ("Persaud").
On April 30, 2018, the horse was discharged from Cornell after undergoing a left carpal arthroscopy performed by non-party, Dr. John Pigott ("Dr. Pigott"). Upon its discharge on April 30, 2018, the horse was placed into the care of its primary care veterinarian, non-party, Dr. [*2]Camilo B. Sierra, DVM, PC ("Dr. Sierra").
On May 9, 2018, the horse was again admitted to Cornell. Upon its admission, Dr. Pigott performed a rectal examination which revealed a markedly distended large colon or large intestine and belly tap values revealed elevated lactate in the abdomen. Dr. Pigott recommended exploratory surgery and referred the matter to Dr. Hurcombe, another Cornell veterinarian and expert in gastrointestinal disease and critical care. After obtaining surgical consent, Dr. Hurcombe performed an abdominal exploratory surgery on the horse. Dr. Hurcombe allegedly found a tight 360-degree volvulus of the large colon at the level of the cecocolic ligament. A pelvic flexure enterotomy was performed to assist evacuating the colon and detorse. The horse's colon was dark purple with moderate mesocolic edema and hemorrhage. Following detorsion, the horse's color allegedly improved with acceptable bleeding from the enterotomy site. Although the cecum was purple and edematous, it had allegedly improved following the correction of the volvulus. A second small intestinal lesion was encountered with a tight mesenteric volvulus; however, following detorsion, the bowel allegedly improved in color and motility. The horse continued to receive care at Cornell until its discharge on May 16, 2018.
Upon the horse's second discharge, Dr. Hurcombe allegedly informed the plaintiff and Persaud that the horse's manure had improved, had become less frequent and that the colon was steadily repairing. The discharge instructions recommended the horse would need 30-days stall rest, 30-days of small yard, then a gradual return to exercise. On May 16, 2018, the horse was again discharged into the care of Dr. Sierra at which point Dr. Hurcombe allegedly advised Dr. Sierra that the horse still had loose manure and should be tubed once a day with a bio sponge until the manure normalized. Two days after the horse was discharged from Cornell, the horse died on May 18, 2018.
On July 25, 2019, the plaintiff filed the instant action alleging, inter alia, that the defendants — veterinarian and a veterinary facility — failed to render proper equine veterinary services to the horse, resulting in various damages including the death of the horse and anguish, emotional distress and psychological trauma to the plaintiff. Issue was joined when Dr. Hurcombe and Cornell filed pre-answer motions to dismiss on August 23, 2022, and August 31, 2022, respectively. On May 22, 2023, this court issued a decision and order dismissing the plaintiff's first, third, fourth, fifth, and seventh causes of action, leaving only causes of action sounding in professional malpractice and (Cornell's) vicarious liability.

Motion Seqs. 003, 004

Dr. Hurcombe and Cornell separately move for summary judgment dismissing the plaintiff's complaint.
Relying upon, inter alia, the pleadings, the plaintiff's deposition transcript, the deposition transcript of Dr. Piggott, Cornell's records, Dr. Sierra's records, and the expert affidavit of Rodney, L. Belgrave, DVM, MS, ACVIM ("Dr. Belgrave"), a board-certified veterinarian specializing in veterinary internal medicine, counsel for Dr. Hurcombe argues that Dr. Hurcombe's actions in caring for the horse were within good and accepted standards of veterinary medical care and that Dr. Hurcombe in no way breached any duty or standard or care owed to the plaintiff or his animal. Counsel for Dr. Hurcombe submits that Dr. Hurcombe's acts and decisions were indicated and appropriate under the circumstances then and there existing, and that nothing that he did or did not do was proximate cause of any of plaintiff's alleged [*3]damages. Counsel contends that there is no evidence that there was any abandonment of care of the horse. Counsel for Dr. Hurcombe further contends that he has set forth a prima facie case establishing that he did not breach any acceptable standards of medical care.
Relying upon, inter alia, the pleadings, invoices and receipts from Cornell, the deposition transcripts of the plaintiff and Dr. Piggott, Cornell's veterinary medical records, Dr. Sierra's records, and the expert affidavit of Dr. Belgrave, counsel for Cornell argues that (a) there are no material issues of fact requiring a trial, (b) plaintiff has no evidence to show that Cornell abandoned care for the horse, (c) plaintiff has no evidence to show that Cornell should not have discharged plaintiff's horse, (d) the undisputed evidence establishes that the horse was stable at the time of discharge and was discharged to the custody and care of the horse's trainer and primary equine veterinarian consistent with common practice, (e) plaintiff cannot demonstrate on the record evidence any element to substantiate his professional negligence claim, and (f) with the dismissal of the professional negligence claim there is no factual basis for a vicarious liability claim since there is no basis to establish any underlying negligence.
In opposition to both motions, plaintiff relies solely upon the affidavit of his counsel who baldly contends that the defendants abandoned the care of his horse by discharging the horse too quickly. Plaintiff's counsel maintains that the defendants should have waited until the horse was symptom free before making the determination to discharge the horse. Counsel argues that the determination of whether the defendants improperly abandoned the care of his horse is a question of fact that should be determined at trial.
In his reply, counsel for Dr. Hurcombe argues that in his opposition, plaintiff's counsel himself indicates that the claim is not one sounding in negligence but rather in abandonment. Counsel for Dr. Hurcombe argues that the allegation of abandonment is part of the claim sounding in negligence. Counsel replies that the plaintiff has produced no expert testimony and no competent evidence that there was any departure from the proper standard of care. Counsel argues that, in contrast and on behalf of Dr. Hurcombe, there is sworn testimony indicating that the horse had much improved since the surgery and was stable for discharge and further was to receive continued treatment and monitoring through the referring veterinarian. Further, Dr. Belgrave's expert affidavit clearly sets forth that the care and treatment rendered by Dr. Hurcombe was in accord with good and accepted veterinary practice and that the discharge of the animal was appropriate and further, that the animal was thereafter treated by Dr. Sierra, the referring veterinarian. The failure of the plaintiff to submit any competent expert testimony to rebut the prima facie establishment of summary judgment on behalf of Dr. Hurcombe is fatal to the plaintiff's claim.
In her reply, counsel for Cornell also points out that plaintiff's counsel opposes the motions for summary judgment on the premise that the veterinary treatment provided to his horse was negligent or improper; instead, the plaintiff asserts that abandonment is the proximate cause of his injuries. To this point, Cornell submits that the problem with plaintiff's position is that the undisputed record demonstrates that defendants discharged his horse, alive, on May 16, 2018, into plaintiff's custody through his designated agents, trainer Randi Persaud and primary equine veterinarian Dr. Camilo Sierra. The horse was not abandoned. Counsel also points out that Dr. Hurcombe gave specific instructions to Dr. Sierra regarding monitoring the surgical incision and administering medications until the horse's manure returned to normal consistency, likely 4- 7 days from discharge, and Dr. Sierra agreed that he would "keep an eye on him." Confirming the continuity of care after the horse was discharged from Cornell's custody, Dr. [*4]Sierra did administer medication the day after discharge, yet he provided no information that the horse was distressed or that the consistency of his manure showed any sign that the abdominal pain had returned at that time, and there is no evidence in the record regarding any concern Dr. Sierra or anyone else had about the horse's condition on the day after discharge. Counsel argues that it is undisputed that the horse's colon lining was still healing from the severe colic condition that was treated at Cornell from May 9-16, 2018 and also undisputed that following discharge the treatment plan was transferred to Dr. Sierra (for medications and incision monitoring) and Randi Persaud (for feeding and exercise). These undisputed facts do not support a claim of abandonment. Finally, counsel argues that the plaintiff has no factual basis to opine on the horse's condition at the time of discharge or any time thereafter because, among other things, he testified during his deposition that he did not know what state of health the horse needed to be in to be discharged and that he does not even know what normal horse manure looks like, so he has no basis whatsoever, factually or otherwise, to comment on the appropriateness of discharge of a horse with loose manure.

Discussion
"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). "Once the movant has demonstrated a prima facie showing of entitlement to judgment, the burden shifts to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action" (Zuckerman v New York, 49 NY2d 557 [1980])."Only the existence of a bona fide issue of fact and not one based on conclusory or irrelevant allegations will suffice to defeat a summary judgment motion" (Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223 [1978]).
Courts have held that professional negligence concepts apply to an action based on the negligence of a veterinarian in performance of professional duties or services. As such, in order to establish a prima facie case of veterinary malpractice, a plaintiff is required to show a deviation or departure from accepted veterinary practice and that such departure was a proximate cause of the injury (Solomon v Center for Specialized Veterinary Care, 47 Misc 3d 131[A] [App Term, 2d Dept, 9th & 10th Jud Dists 2015]). Ordinarily, in a veterinary malpractice action, expert testimony is necessary to establish the applicable standard of care, as well as a deviation from such standard, which resulted in injury, unless the matter is one within the experience and observation of the average layperson (Solomon v Center for Specialized Veterinary Care, supra; Juliano v S.I. Vet Care, 34 Misc 3d 147 [A] [App Term, 2d, 11th & 13th Jud Dists 2012]). Furthermore, in a veterinary malpractice action, as in any action involving the death or injury of an animal, the measure of damages for injury to, or destruction of, an animal is the amount that will compensate the owner for the loss. A pet owner may not recover damages for emotional distress caused by the allegedly negligent death of a pet (Jason v Parks, 224 AD2d 494 [2d Dept 1996]). 
As articulated by the Appellate Term in Kim v Zawie (66 Misc 3d 137[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2020]):
Generally, in a malpractice action, expert opinion is necessary to establish the applicable standard of care, as well as a deviation from such standard, which resulted in injury, unless the matter is one within the experience and observation of the average layperson . . . While expert opinion may be dispensed with in veterinary malpractice actions "where the very nature of the acts complained of bespeaks improper treatment and malpractice" (Mathew v Jerome L. Klinger, D.V.M., P.C., 179 Misc 2d 609, 610 [App Term, 2d Dept, 9th & 10th Jud Dists 1998] [internal quotation marks omitted]; see also Matter of Restrepo v State of New York, 146 Misc 2d 349, 355 [Ct Cl 1989], affd 179 AD2d 804 [1992]), this is not such an action.
Here, both defendants have established their prima facie entitlement to judgment as a matter of law. Indeed, pursuant to Dr. Belgrave's expert affidavit, treatment of the subject horse was at all times in accordance with good and acceptable standards of veterinary medical practice (see NYSCEF Doc #77 & 95). Further, Dr. Belgrave affirmed that the discharge summary made clear that the plaintiff's horse suffered a massive injury to the colon and that post-operatively, the animal continued to improve (id.). Additionally, the horse was discharged into the care of its primary care veterinarian; and therefore, the plaintiff's claim of abandonment also lacks merit.
In opposition, the plaintiff has failed to provide any evidence, including an expert affidavit, to rebut the defendants' prima facie entitlement to judgment as a matter of law. The law is settled; an affirmation made by an attorney without personal knowledge of the facts is without evidentiary value and thus will not defeat a motion for summary judgment (Zuckerman v City of New York, 49 NY2d 557, 563 [1980]). In any event, plaintiff's counsel's contention that the horse was discharged too soon is merely speculation, with no basis in any facts, and is thus insufficient to defeat a summary judgment motion (see Johnson v Sniffen, 265 AD2d 304, 305 [2d Dept 1999]). As Cornell also correctly addressed, since the plaintiff cannot establish negligence on the part Dr. Hurcombe, his vicarious liability claim against Cornell cannot be sustained (see Bing v Thunig, 2 NY2d 656, 666-667 [1957]; see also Mitchell v Goncalves, 179 AD3d 787, 788-789 [2d Dept 2020]). Consequently, the plaintiff has failed to raise any triable issue of fact as to, inter alia, the defendants' purported departure of good and acceptable standards of veterinary care.

Conclusion
Accordingly, it is hereby,
ORDERED, that the motion by defendant, Dr. Samuel Hurcombe BSC, BVMS, MS DACVIM, for summary judgment dismissing the complaint is GRANTED; and it is further,
ORDERED, that the motion by defendants, Cornell University, Cornell College of Veterinary Medicine, and Cornell Ruffan Equine Specialists' for summary judgment dismissing the complaint is GRANTED; and it is further,
ORDERED, that the action is DISMISSED IN ITS ENTIRETY.
Any applications not specifically addressed are herewith DENIED.
The parties' remaining contentions have been considered and do not warrant discussion.
This constitutes the decision and order of the Court.
The matter is disposed.
Dated: June 23, 2025
Mineola, New York
E N T E R :
HON. SARIKA KAPOOR, A.J.S.C.