## Joseph v 291 Broadway Realty Assoc., LLC

2024 NY Slip Op 30770(U)

March 11, 2024

Supreme Court, New York County

Docket Number: Index No. 158519/2020

Judge: Lynn R. Kotler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: <u>HON.LYNN R. KOTLER, J.S.C.</u>

PART <u>8</u>

Orin Joseph

INDEX NO. 158519/2020

MOT. DATE

- v -

MOT. SEQ. NO. 3 and 5

291 BROADWAY REALTY ASSOCIATES, LLC et al

The following papers were read on this motion to/for _sj_____

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s)._____ |
| Notice of Cross-Motion/Answering Affidavits — Exhibits | ECFS Doc. No(s)._____ |
| Replying Affidavits | ECFS Doc. No(s)._____ |

This is an action for injuries sustained at a construction site in violation of the Labor Law. There are two summary judgment motions pending, which are hereby consolidated for the court's consideration and disposition in this single decision/order.

In motion sequence 3, plaintiff moves for partial summary judgment on liability on his Labor Law §§ 240[1], 241[6] and 200 claims. Defendants 291 Broadway Realty Associates, LLC ("291 Broadway") and G.C. Plumbing & Heating Inc ("GC Plumbing") oppose the motion. In motion sequence 5, defendants/third-party plaintiffs 291 Broadway and GC Plumbing move for summary judgment against the third-party defendant Orin & Sons Mechanical LLC ("Orin") on their claim for contractual indemnification. Orin opposes that motion and cross-moves for summary judgment dismissing the third-party complaint. Issue has been joined and the motions were timely brought. Therefore, summary judgment relief is available. The court's decision follows.

Plaintiff was injured on August 11, 2020, when he was working on the third floor of the building located at 291 Broadway as a plumber. Plaintiff operated his own company, Orin, as a sole proprietor. 291 Broadway owned the building and GC Plumbing was the general contractor for the retrofit of a fire sprinkler system in the building (the "project"). GC Plumbing was hired to perform the installation. GC Plumbing in turn hired Orin to install sprinklers.

Many of the material facts are in dispute. At the time of the accident, plaintiff testified that he was working on the third floor of the subject building installing pipes inside a 12-foot ceiling. According to plaintiff, the only way to access the ceiling was to use a ladder. Before the accident, plaintiff stated that he was using an unsecured 12-foot A-frame stepladder on flooring that was covered by plastic sheeting. The plastic sheeting was placed by a person hired by 291 Broadway to protect the floors. Plaintiff testified that the plastic sheeting was slippery and an insecure footing for the ladder. Plaintiff further stated that he had complained to both GC Plumbing and the building superintendent about the plastic

Dated: _____7|11|24_____

_____
HON. LYNN R. KOTLER, J.S.C.

**1. Check one:**  ☐ **CASE DISPOSED**   ☒ **NON-FINAL DISPOSITION**

**2. Check as appropriate: Motion is**  ☐ **GRANTED** ☐ **DENIED** ☒ **GRANTED IN PART** ☐ **OTHER**

**3. Check if appropriate:**  ☐ **SETTLE ORDER** ☐ **SUBMIT ORDER** ☐ **DO NOT POST**

☐ **FIDUCIARY APPOINTMENT** ☐ **REFERENCE**

[* 1]

sheeting on the floor, three or four times, and as recent as about two or three weeks before the accident. Specifically, plaintiff explained:

A. Yes. I was going up and when I reached about midway, that put me around three to four steps and the ladder, it starts walking. That's what we call it. It's still on the A, but it keeps moving. We call -- our phrase is the ladder is walking while you're going up. I turned going up with caution and when I reached the ninth floor, that's when it start tilting.

Q. You mean –

A. The ninth step.

Q. That's when the ladder tilted?

A. Yes.

Q. You indicated it was moving before that. Do you mean it was sliding on the floor?

A. Yes, it was sliding, yes.

Q. So this –

A. Not sliding. We call it walking. Like it's not sliding, but it's like jumping.
…

Q. Do you believe, if I understand you correctly, do you believe that the exclusive cause of this accident is because there was plastic on that floor and that's what caused the ladder to slide or move?

A. Hundred percent.

Defendants dispute plaintiff's version of events and point to sworn affidavits of three individuals submitted in opposition to the motion, to wit, Asjad Mahmood, Aaron Franklyn, and Ioannis Likidis. Mahmood states that he was hired to provide protective covering for the furniture and floors in the building while during the time period that plaintiff worked in the building. Mahmmod claims that he personally observed plaintiff "stand on the top (highest) step of a 6-foot A-frame ladder", that he observed plaintiff "moving the plastic" which was "not attached to the floor", "very light and very easy to move". Mahmood further claims:

I was not in the building on the day of the accident involving Orin Joseph. I saw him very soon after the accident with a bandage or brace on his wrist. He told me he hurt himself when his ladder tipped over. He said nothing about plastic.

Franklyn is the building manager, employed at the building during all relevant times. According to Franklyn, "no complaints" were ever made about "slippery plastic on the floors". Finally, Likidis is the owner of GC Plumbing. Likidis explains that due to the early-Covid Pandemic, GC Plumbing employees worked at separate times from Orin and plaintiff specifically. Likidis further states that plaintiff reported the accident to him shortly after it occurred. Specifically, LIkidis claims the following:

Orin Joseph called me in the evening one day in August of 2020 and told he had an accident and that he hurt his wrist earlier that same day while working in the building at 291 Broadway. In that phone call he stated he was leaning off the side of the top of a ladder while his son was holding the ladder. He stated that his son

failed to hold the ladder properly. He stated nothing else about the cause of the accident on that day and for much more than a month after that.

Likidis otherwise claims consistent with Franklyn that plaintiff never complained about "slippery plastic on the floors" nor that he "had any issues or problems regarding ladders or scaffolds or equipment (or lack of equipment) for the job…" and that plaintiff "always supplied his own equipment for the dozens of different jobs he worked on over the years for [GC Plumbing]. There was no different arrangement or understanding for the building…"

<u>Parties' arguments</u>

In motion sequence 3, Plaintiff argues that he is entitled to summary judgment because this is a "simple 'falling worker'" case and "the failure of the ladder to remain upright shows, prima facie, that the plaintiff was not provided with proper protection and establishes the defendant's liability under Labor Law § 240[1]." Plaintiff further argues that the failure to provide proper footing for the ladder or secure the 12-foot ladder violates Industrial Code § 23-1.21 [b][4][ii], [e][3] and Industrial Code § 23-1.21 [e][3], respectively. Finally, plaintiff asserts that he is entitled to judgment on liability on his Section 200 claim because the defendants created a dangerous condition and failed to correct it despite having notice of same.

In opposition to the motion, defendants argue that there are at least triable issues of fact sufficient to defeat the motion based on the aforementioned affidavits as well as photographs of the accident location which have been provided to the court. Alternatively, defendants argue that the motion should be denied because plaintiff has failed to provide the last known address of "two critical employees Barr Keson and Phil Ferrante" who "worked int eh subject building during the two (2) week period immediately preceding the subject incident."

On reply, plaintiff maintains that he has met his burden on this motion, that the evidence submitted by defendants merely confirms plaintiff's version of events and that plaintiff never made an admission against interest.

In motion sequence 5, 291 Broadway and GC argue that they are entitled to contractual indemnity from Orin pursuant to GC's contract with the latter, a portion of which has been provided to the court. The document is signed by plaintiff as Owner on behalf of Orin. Said document, hereinafter referred to as the "Indemnity Agreement", provides in pertinent part as follows:

**Exhibit "A"**

**INDEMNITY AND INSURANCE REQUIREMENTS**

**The provisions of this exhibit are incorporated and made a part of the attached agreement dated ___ (referred to in this exhibit as "Agreement"), between Orin [] as Subcontractor [] and GC [] as Contractor [].**

**1. <u>Indemnification and Hold Harmless</u>**

(a) To the fullest extent permitted by law, Subcontractor … agrees … to indemnify, defend and hold harmless Contractor, and their respective affiliates, principals, partners, members, stockholders, officers, directors, agents, employees, servants, successors and assigns (hereinafter collectively referred to as "Indemnitees") from and against any and all liabilities, claims, demands, losses, obligations, fines, liens, penalties, actions, judgments, damages, costs, charges, and expenses …in connection with, or as a consequence of the performance or nonperformance of the Subcontractors Work (whether same be labeled as full indemnification, partial indemnification or contractual

[* 3]

contribution) arising from, in connection with and/or relating to the work described in the Agreement.

Meanwhile, in a cross-motion, Orin disagrees and maintains that even if valid, Orin did not have an obligation to indemnify 291 Broadway and the document proffered by the third-party plaintiffs "appears incomplete and such incompleteness renders the produced page smoot and inapplicable to any work Orin [] performed at 291 Broadway." Orin otherwise argues that triable issues of fact as to its negligence produces summary judgment in favor of the third-party plaintiffs. Further, Orin cross-moves to dismiss the third-party complaint, arguing *inter alia* that absent a claim for contractual indemnity, Orin has no liability for contribution or common law indemnity because plaintiff did not sustain a "grave injury" within the meaning of Workers Compensation Law § 11. On reply, the third-party plaintiffs concede that plaintiff's alleged injuries fall below the threshold of a grave injury and thus summary judgment should be granted dismissing their common law indemnification and contribution claims against Orin. However, the third-party plaintiffs otherwise maintain that they are entitled to contractual indemnification from Orin as Orin does not dispute the validity of the Indemnity Agreement and Orin's counsel's affirmation is not based upon personal knowledge and therefore insufficient to raise a triable issue of fact.

## DISCUSSION

On a motion for summary judgment, the proponent bears the initial burden of setting forth evidentiary facts to prove a prima facie case that would entitle it to judgment in its favor, without the need for a trial (CPLR 3212; *Winegrad v. NYU Medical Center*, 64 NY2d 851 [1985]; *Zuckerman v. City of New York*, 49 NY2d 557, 562 [1980]). If the proponent fails to make out its prima facie case for summary judgment, however, then its motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v. Prospect Hospital*, 68 NY2d 320 [1986]; *Ayotte v. Gervasio*, 81 NY2d 1062 [1993]).

Granting a motion for summary judgment is the functional equivalent of a trial, therefore it is a drastic remedy that should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders v. Ceppos*, 46 NY2d 223 [1977]). The court's function on these motions is limited to "issue finding," not "issue determination" (*Sillman v. Twentieth Century Fox Film*, 3 NY2d 395 [1957]).

Triable issues of fact preclude plaintiff's motion. Although plaintiff claims he could not move the plastic, defendants' witnesses disagreed with that testimony. They also disagreed with plaintiff that plaintiff had made prior complaints to them about the condition of the floors. Plaintiff's claims about how the accident happened are also in dispute, and defendant's witness Likidis testified that plaintiff admitted the ladder tipped over because he was leaning over it and his son wasn't properly holding the ladder, not because the ladder had been placed on plastic floor covering and "walk[ed]". If a jury credits the defendants' witnesses' version of events, they will find that the defendants were not negligent, defeating the Labor Law § 200 and common law negligence claim, and that plaintiff's accident was not proximately caused by a violation of either Labor Law §§ 240[1] or 241[6]. Accordingly, plaintiff's motion sequence 3 is denied.

Turning to motion sequence 5, at the outset, all but the third-party plaintiffs' contractual indemnity claim are severed and dismissed based on the third-party plaintiffs' concession. As for the contractual indemnity claim, the motion is denied. "A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987], quoting *Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153 [1973]; *see also Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004]). However, "General Obligations Law § 5-322.1 prohibits and renders unenforceable any promise to hold harmless and indemnify a promisee which is a construction contractor or a landowner against its own negligence" (*Kilfeather v Astoria 31st St. Assoc.*, 156 AD2d 428 [2d Dept 1989]).

On the threshold question of whether defendants have proffered a valid and binding contract, the court agrees with plaintiff that their failure to proffer the Agreement referred to within the Indemnity

[* 4]

Agreement is fatal to the third-party plaintiffs' motion. The Indemnity Agreement expressly provides that Orin will defend and indemnify for all claims "in connection with, or as a consequence of the performance or nonperformance of the Subcontractors Work ... arising from, in connection with and/or relating to the work described in the Agreement." Without the Agreement, the court cannot determine whether the injury-producing work falls with the definition of work set forth in the Indemnity Agreement. Therefore, the third-party plaintiffs' motion on their claim for contractual indemnification against Orin is denied. Relatedly, the court denies the cross-motion as to this claim, for while the third-party plaintiffs have failed to provide a copy of the underlying Agreement, this failure is not necessarily fatal to the claim, which they may otherwise prove at trial.

**CONCLUSION**

In accordance herewith, it is hereby:

**ORDERED** that motion sequence 3 is denied in its entirety; and it is further

**ORDERED** that motion sequence 5 is granted only to the extent that all but the third-party plaintiffs' claims against Orin for contractual indemnification are severed and dismissed; and it is otherwise

**ORDERED** that the motion and cross-motion on motion sequence 5 are otherwise denied.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby expressly rejected and this constitutes the decision and order of the court.

Dated: _____
New York, New York

So Ordered: _____
Hon. Lynn R. Kotler, J.S.C.

[* 5]