## Idzkowski v New York City Health & Hosp. Corp.

2025 NY Slip Op 31621(U)

May 5, 2025

Supreme Court, Kings County

Docket Number: Index No. 500183/2021

Judge: Inga M. O'Neale

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an City Term, Part 22, of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 5th day of May, 2025.

P R E S E N T:

HON. INGA M. O'NEALE,
                                Justice.
-------------------------------------------------------------------------X

HENRYK IDZKOWSKI,

                                Plaintiff,
              -against-                                        Index No.: 500183/2021


NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, KINGS COUNTY HOSPITAL CENTER, CHV 690-738 ALBANY AVENUE HOUSING DEVELOPMENT FUND CORPORATION, THE CITY OF NEW YORK and NEELAM CONSTRUCTION CORPORATION,

                                Defendants.
-------------------------------------------------------------------------X

NEELAM CONSTRUCTION CORPORATION,

                                Third-Party Plaintiff,
              -against-

SNP CONSULTANTS CORP.,

                                Third-Party Defendant.
-------------------------------------------------------------------------X

| The following e-filed papers read herein: | NYSCEF Doc Nos.: |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 81-99 |
| Opposing Affidavits (Affirmations) | 100-102 |
| Affidavits/ Affirmations in Reply | 103 |
| Other Papers: | |

[* 1]

Upon the foregoing papers, plaintiff Henryk Idzkowski (plaintiff) moves for an order, pursuant to CPLR 3212, granting him partial summary judgment as to liability on his Labor Law § 240 (1) claim (motion sequence number 2). Plaintiff's motion is denied in its entirety.

## Background

Plaintiff Henryk Idzkowski pleads causes of action premised on common-law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6), based on injuries suffered on October 23, 2020, when he allegedly fell from a scaffold while removing bricks at a demolition project occurring at 444 Winthrop Street, Brooklyn, New York (premises) (NY Cts Elec Filing [NYSCEF] Doc No. 44). The premises, owned by defendant City of New York (the City), was operated as Kings County Hospital by defendant New York City Health and Hospitals Corporation. The City had contracted with defendant Neelam Construction Corporation (Neelam) (collectively, defendants) to serve as the general contractor (NYSCEF Doc No. 86 at 8; NYSCEF Doc No. 91 at 35). Neelam, in turn, subcontracted with plaintiff's employer, SNP Consulting Corp. (SNP) in order to perform masonry work at the premises (NYSCEF Doc No. 97).

According to the plaintiff's deposition testimony, on October 23, 2020, he was working for SNP and was assigned to climb scaffolding at the premises and continue demolition work that was in progress (NYSCEF Doc No. 90 at 18, 59, 61). He started working for SNP in August 2020 and had only worked on the demolition project, which entailed removing bricks from existing walls and replacing them with new bricks (*id.* at 22, 31, 35). When plaintiff began work on the project, the scaffold had already been

2

[* 2]

assembled, and the project was already ongoing (*id.* at 37). Generally, on the job, he would wear a safety harness, although he was not specifically told to do so by anyone at SNP (*id.* at 45-46). Although the plaintiff would wear a harness if he was required to work at an elevation of more than five feet, he would only tie off a safety line if there was a tie-off point or to the pipe scaffolding itself (*id.* at 48, 50-51). He testified that he had complained to the shop steward on multiple occasions that there were no safety lines present at the jobsite (*id.* at 54-55).

On the day of his accident, plaintiff's foreman directed him on where he should work (*id.* at 61-62). Although he did not remember the exact location, he remembered that it was above the first floor (*id.* at 62). Plaintiff testified that he was not wearing a harness, although he asked about wearing one, because the foreman "said it was not needed on that level" (*id.* at 64). That morning, plaintiff was working with another worker, who was within five feet of him, and two helpers who were removing debris (*id.* at 65-66). At the time of his accident, plaintiff was using a pneumatic hammer to remove brick, and had been working for about fifteen minutes (*id.* at 66). He testified that he was standing on two planks, which made up the surface of the scaffold, and that he believed that the planks he was standing on were safe and secure (*id.* at 68-70). Plaintiff testified that he "fell off the scaffolding" because "[t]he hammer pushed [him] away from the wall" and "[he] started falling down" (*id.* at 81-82). He explained that he tried to grab the pipe scaffolding as he fell but "it was too late" and he was unable to grab it (*id.* at 83-84).

Plaintiff further testified that the planking did not extend as far as the pipes of the scaffolding, and that there was a three to four foot gap between the end of the plank and

3

[* 3]

where the piping of the scaffolding system was (*id.* at 89-90). He explained that "[w]hen [he] turned on the hammer, it pushed [him] away from the wall" and "[t]hat's why [he] fell backwards" (*id.* at 88-89). Plaintiff estimated that he fell three or four feet and landed on the planks (*id.* at 91). He further testified that he had told the foreman prior to his accident "that the corner wasn't secured" (*id.* at 93). Plaintiff did not remember if he had told the foreman who he complained to earlier, that he had fallen through the gap in the planks (*id.* at 99).

Nitin Sahu, employed by Neelam as the site supervisor for the premises, testified that he was on site five days per week, but that on the day of the accident, he was at a different project, "to pick up some materials … for the hospital project" (NYSCEF Doc No. 91 at 24, 31). Sahu testified that the scaffolding had been installed by a company called PJP Installers, and that Neelam "[was] supposed to inspect it and maintain" (*id.* at 33). Sahu further testified that he had authority to stop unsafe work practices of a subcontractor's employees and had stopped work once when SNP employees "[took] out some planks to transport the materials, which they are not supposed to do" (*id.* 36-37). His understanding was that the plaintiff's accident happened on the bulkhead, where there was only one level of scaffolding, and that the plaintiff was working on the first level of the scaffold (*id.* at 40-41).

Sahu testified that scaffold inspections were conducted daily, and that he would discuss with the foreman where people would be working that day and then would go check that particular area. He further testified that an inspection would consist of visually checking whether the deck is fully planked, whether all the pins in the scaffolding are in

4

order, and whether all the wall ties look safe (*id.* at 47). According to Sahu, the planks of the scaffold overlapped and were nailed to one another, and the corners were tied with wire to the scaffold (*id.* at 48). The scaffold was approximately six feet wide, and each deck was approximately fifteen to twenty feet in length, with stairs between each level (*id.* at 51). There were three railings in the area that the accident occurred – a toe bar, a middle rail at about twenty one inches high, and a top rail which was about four feet high, surrounding three sides of each level of scaffolding (*id.* at 55, 60). There was also netting up at the time of the accident, which extended the entire length of the scaffolding and also around the sides (*id.* at 87). He stated that, if a worker was on a scaffold using a jackhammer without any type of harness or tied off to the scaffolding, it was "not unsafe" (*id.* at 65).

Regarding the plaintiff's accident, Sahu testified that the SNP foreman "told [him] that [plaintiff] slipped on the scaffold and he hit the wall with his shoulder" (*id.* at 73). When he arrived at the job site, he did not observe any spaces between the scaffolding and the toe boards where someone could have fallen through to a lower level, nor any space between the planking and toe boards where someone could have fallen (*id.* at 87). He also didn't observe any unsafe condition and noted that the planking was sturdy and did not move, and that there were no gaps between the boards (*id.* at 98).

Umesh Jadhav, a senior project manager at Neelam at the time of the accident, also testified that he remembered investigating the plaintiff's accident (NYSCEF Doc No. 92 at 14). He stated that the site supervisor was not available that day, which is why he made the accident report for the plaintiff's accident (*id.* at 28). Jadhav testified that no one witnessed the accident, but that "[t]here [were] some people who said they were all working

[* 5]

together … and none of them had physically seen it happen because they were in a group" (*id.* at 31-32). He further testified that in the location where the accident occurred, there was no scaffolding, "only some steps" (*id.* at 35). He noted that he was not aware of anyone removing scaffolding planks to pass tools or materials to other levels, and that he did not receive any reports of issues or complaints with the scaffolding or stop work orders prior to the accident (*id.* at 38). He noted that, generally, the scaffold inspection was done around 7:00 am or 7:30 am every morning (*id.* at 44-45). He does not remember anyone advising him that the plaintiff tripped and fell on anything and does not think that he asked the SNP foreman what caused the plaintiff to fall (*id.* at 54-55). Jadhav did note, however, that there were no spaces or gaps or missing planking in the scaffold and he would check for that when he went on walkthroughs every day (*id.* at 58). He further noted that, based on the scaffolding inspections and his walkthroughs, he felt the decking was proper and had not received any complaints about the scaffolding (*id.* at 60).

Paul Orangian, the owner of SNP, testified that SNP had been hired to do the masonry work at the premises and had started working on the project in 2019 (NYSCEF Doc No. 93 at 11, 14-15). He was not present at the project on the date of the accident, but received a phone call from the foreman, who "told [him] Henry ha[d] tripped and they [took] him to the hospital" (*id.* at 14, 17-18, 20). Orangian testified that he spoke to the plaintiff at the hospital, and at which point the plaintiff told him that he was working on the roof and that he tripped and fell on the wire, the tools, that he was using (*id.* at 23). He admitted that he was unable to recall the plaintiff's exact words but that was the "general

6

[* 6]

idea" of what the plaintiff told him about the accident (*id.* at 29). He did not know if the plaintiff was using the pneumatic hammer at the time of the accident (*id.* at 27).

Orangian stated that he did walkthroughs every day and that he believed that the foreman inspected the scaffolding, although he did not remember if anyone inspected the scaffolding the day of the accident (*id.* at 34-36). He noted that Neelam installed the scaffolding and normally inspected it every day (*id.* at 40). He was not sure if people removed planks to pass materials or debris through the opening, but admitted that they "might have" and that in "[s]ome locations the planks have to be removed … [for] [a]ccess, mobilization, material moving" (*id.* at 36). He did not recall if he had ever seen missing planks on the scaffolding prior to the accident, and no one had ever complained about loose or missing planks on the scaffolding (*id.* at 45, 48). He also did not recall if there were any instructions provided to plaintiff that he disobeyed on the day of the accident (*id.* at 38). Orangian believed that the accident occurred on the first level of scaffolding, which was [approximately two feet … from the roof level" (*id.* at 52-53).

Mohan Gahunia, the SNP foreman working at the premises on the date of the accident, testified that he did not see the accident, but was standing on the ground at the time (NYSCEF Doc No. 94 at 9, 10). He testified he was approximately fifty or sixty feet from the plaintiff at the time of his accident, and that the shop steward told him that plaintiff "was walking or slipped" (*id.* at 25). He went to where plaintiff was and when he arrived, he saw plaintiff "[s]tanding up on the scaffold" (*id.* at 33). He believes the platform was about eight to ten feet from the roof surface, and that SNP employees were working on that level that day, although there were three levels above (*id.* at 35, 37, 39). When he was

7

walking on the scaffold immediately after the accident, he looked at all of the scaffolding and made sure that the planks were in place (*id.* at 47-48). He does not believe that anyone told him that plaintiff tripped on a wire or electrical cord (*id.* at 48).

Gahunia believed that the SNP workers were demolishing the bricks (*id.* at 49). He testified that this work involved the use of a jackhammer (*id.* at 49). He did not observe anyone removing scaffolding planking in order to pass material or debris through to another level (*id.* at 50). Gahunia testified that the shop steward yelled down to him when the accident occurred, and it took him a "[m]aximum [of] one or two minutes" to arrive to the location of the plaintiff's accident (*id.* at 53). When he arrived on the level where he believed the accident occurred, he walked on the scaffold and noticed the toe boards were around the scaffold decking and there were no gaps between the scaffolding and toe boards (*id.* at 54). Gahunia testified that he was also on the scaffolding "about maybe ten minutes before the accident" to check if everything was fine, and that the decking "was okay" and "all fine" at that time (*id.* at 55, 56).

In support of their opposition to plaintiff's motion, defendants also produced the inspection maintenance log for the scaffold at the premises, which indicated that there were no gaps or concerns about the scaffolds on the date of the accident (NYSCEF Doc No. 101 at 16), as well as the incident investigation report, which stated that plaintiff "tripped and fell on side" (NYSCEF Doc No. 102 at 2).

8

## Discussion

"'[S]ummary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue'" (*Rotuba Extruders, Inc v Ceppos*, 46 NY2d 223, 231 [1978], quoting *Moskowitz v Garlock*, 23 AD2d 943 [3rd Dept 1965]). "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hospital*, 68 NY2d 320, 324 [1986], citing *Winegrad v New York Univ Med Center*, 64 NY2d 851 [1985]). When evaluating a motion for summary judgment, "facts must be viewed 'in the light most favorable to the nonmoving party'" (*Vega v Restani Const Corp*, 18 NY3d 499, 503 [2012]). "It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (*Vega v Restani Const Corp*, 18 NY3d at 505).

Plaintiff argues that his uncontested account of the accident - that he was working on a scaffold with an unguarded gap where planks were missing or unsecured, when he fell into the gap resulting in injuries - establishes his prima facie entitlement to judgment as a matter of law. Plaintiff argues that, while there may be discrepancies in the testimony with respect to the height at which the plaintiff was working or the cause of his fall, "there is no admissible evidence to refute that a violation of § 240 (1) was *a* proximate cause of the fall" (NYSCEF Doc No. 82 at 2). Plaintiff maintains that he has established this prima facie entitlement to judgment as a matter of law, as he has demonstrated that the scaffold "was inadequate and defective in that it was missing planks, creating an opening/void/unguarded

9

edge and [plaintiff] fell into this opening/void, off the unguarded edge, resulting in injury"

(*id*. at 13).

In opposition, defendants contend that the plaintiff has failed to establish his prima facie entitlement to judgment as a matter of law. Defendants argue that "significant questions of fact exist due to the conflicting versions of events, and there is no evidence of any defects associated with the scaffold such as to impose liability under Labor Law 240," warranting denial of the plaintiff's motion (NYSCEF Doc No. 100 at 10). Notably, defendants point out that, although plaintiff testified that the accident happened when he fell into a gap or void in the planking, testimony of Neelam and SNP employees indicated that the scaffold had been investigated prior to and after the plaintiff's accident, and no gap in the scaffold planking was noted. Defendants also maintain that "the act of being propelled backwards when using a jackhammer is not gravity related" (*id.* at 16).

"Labor Law § 240 (1) requires contractors to provide appropriate safety devices for the protection of workers engaging in labor that involves elevation related risks" (*Santiago v Hanley Group, Inc.*, 216 AD3d 833, 833-834 [2d Dept 2023]). That provision provides that:

> "[a]ll contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed"

10

"To prevail on a cause of action alleging a violation of Labor Law § 240 (1), a plaintiff must show, prima facie, that the defendant violated the statute and that such violation was a proximate cause of his or her injuries" (*Lochlan v H&H Sons Home Improvement, Inc.*, 216 AD3d 630, 632 [2d Dept 2023]). However, "'[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the failure to use, or the inadequacy of, a safety device of the kind enumerated therein'" (*Medina-Arana v Henry Street Property Holdings, LLC*, 186 AD3d 1666, 1667 [2d Dept 2020], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). "[A] fall from a scaffold does not establish, in and of itself, that proper protection was not provided, and the issue of whether a particular safety device provided proper protection is generally a question of fact for the jury" (*Alava v City of New York*, 246 AD2d 614, 615 [2d Dept 1998] [internal citations omitted]).

Here, the plaintiff has failed to establish his prima facie entitlement to judgment as a matter of law on his Labor Law § 240 (1). The plaintiff's own submissions in support of his motion highlight numerous factual issues as to how the accident occurred, whether the defendants failed to provide the plaintiff with proper protection and whether such failure proximately causes his injuries (*see Lozada v St. Patrick's RC Church*, 174 AD3d 879, 881 [2d Dept 2019], quoting *Yao Zong Wu v Zhen Jia Yang*, 161 AD3d 813, 814-815 [2d Dept 2018]). Although plaintiff testified that he had observed a three or four foot gap between the end of the plank and the piping of the scaffold and had complained that the corner needed to be secured (NYSCEF Doc No. 90 at 89-90, 93), the Neelam site supervisor

11

testified that when he arrived that day, he did not witness any gaps or unsecured planking on the scaffold (NYSCEF Doc No. 91 at 87, 98). Similarly, the senior project manager at Neelam, who was on site at the time of the accident, noted that there were no spaces or gaps or missing planks in the scaffolding, that scaffolding inspections were done every day, and that based on the scaffolding inspections and his daily walkthroughs, he felt the scaffolding was safe, and had not received any complaints about the scaffolding or the decking (NYSCEF Doc No. 92 at 44-45, 58, 60). Furthermore, SNP's owner testified that the plaintiff stated that the cause of his accident was that he tripped on the cord of the pneumatic hammer he was using (NYSCEF Doc No. 93 at 23). SNP's foreman, who was present at the time of the accident also testified that he reached the plaintiff one to two minutes after the accident, and that the SNP employees were working on the level where he saw plaintiff standing immediately after the accident (NYSCEF Doc No. 94 at 33, 35, 37, 39). He noted that when he was walking on the scaffold immediately after the accident, he looked at all the scaffolding and observed that all the planks were in place, and that there were no gaps between the scaffolding and the toe board on the deck (*id.* at 47-48, 54). He also testified that he had been on the scaffolding about ten minutes before the accident and that the decking was okay and "all fine" (*id.* at 55, 56).

Here, the testimony submitted by the plaintiff, which presents inconsistent versions as to the condition of the scaffold and the decking, has created triable issues of fact with respect to how the accident occurred. Thus, it cannot be concluded, as a matter of law, that the alleged failure to provide plaintiff with appropriate protection proximately caused his injuries (*see Karkwowksi v Grolier Club of City of New York*, 144 AD3d 865, 866 [2d Dept

12

[* 12]

2016]; *Duran v Kijak Family Partners, L.P.*, 63 AD3d 992, 994 [2d Dept 2009], citing *Reborchild v Broadway Mall Props., Inc.*, 10 AD3d 713, 714 [2d Dept 2004]; *Nelson v Ciba-Geigy*, 268 AD2d 570, 572 [2d Dept 2000] ["inconsistent versions of how the accident occurred raise a question of fact as to the credibility of the plaintiff, and are insufficient to prove, as a matter of law, that the defendants' failure to provide the plaintiff with proper protection proximately caused his injuries"]; *Puchalski v 4212 28ST LLC*, 69 Misc 3d 1222[A], 2020 NY Slip Op 51463[U], at *7 [Sup Ct, Kings County 2020]). Furthermore, contrary to the plaintiff's contentions, testimonial evidence, including testimony from SNP's foreman that he inspected the scaffolding immediately after the accident on the level on which plaintiff and all SNP employees were working that day (NYSCEF Doc No. 94 at 33, 35, 37, 39), is sufficient to demonstrate the existence of triable issues of fact as to the circumstances surrounding plaintiff's accident (*see Muco v Board of Education of City of New York*, 203 AD3d 610, 611 [1st Dept 2022] [Defendants' witnesses, who inspected the scaffold immediately after the plaintiff's accident and confirmed it was stable, properly secured, and had handrails in all sections, directly contradicted the plaintiff's testimony and his coworker's affidavit, providing sufficient evidence to raise issues of fact despite none witnessing the accident]; *Santos v Condo 124 LLC*, 161 AD3d 650, 654 [1st Dept 2018]; *Perez v Folio House, Inc.*, 123 AD3d 519, 519-520 [1st Dept 2014]).

In any event, however, defendants raised a triable issue of fact in opposition to the plaintiff's motion through their reference to the inconsistencies in the testimony provided by the plaintiff and their submission of the inspection reports for the premises, which note

13

that the scaffolding was inspected the day of the accident and that there were no gaps or missing planks noticed at that time (NYSCEF Doc No. 101 at 16) (*see Corchado v 5030 Broadway Properties, LLC*, 103 AD3d 768, 769 [2d Dept 2013]). Here, where defendants provided the daily inspection reports for the subject scaffolding on the day of the accident, as well as the days immediately before and after, these reports, indicating that Neelam had inspected the scaffolding the morning of the accident, along with the testimony of Sahu, Jadhav, and Gahunia that they observed no gaps or spaces on the scaffolding either before or after the plaintiff's accident, is sufficient to raise an issue of triable fact precluding summary judgment in plaintiff's favor (NYSCEF Doc No. 91 at 87, 98; NYSCEF Doc No. 92 at 58, 60; NYSCEF Doc No. 94 at 54-56; NYSCEF Doc No. NYSCEF Doc. No. 101 at 15-17) (*see Loretta v Split Development Corp.*, 168 AD3d 823, 825 [2d Dept 2019] [where defendant raised triable issues of fact regarding the manner in which the accident occurred, court denied plaintiff's motion for summary judgment due to triable issues of fact regarding whether the ladder provided adequate protection to plaintiff and, if not, whether the ladder's failure to provide adequate protection was a proximate cause of plaintiff's injuries]; *Degen v Uniondale Union Free Sch. Dist.*, 114 AD3d 822, 823 [2d Dept 2014] [plaintiff's summary judgment motion on his Labor Law § 240 (1) claim denied where triable issues of fact existed as to how the accident occurred, including whether he fell because he merely lost his balance]; *cf. Melchor v Singh*, 90 AD3d 866, 869 [2d Dept 2011]).

Accordingly, it is hereby

**ORDERED** that the branch of plaintiff's motion seeking partial summary judgment as to liability with respect to his Labor Law § 240 (1) cause of action is denied.

All arguments raised on the motion and evidence submitted by the parties in connection thereto have been considered by this court, regardless of whether they are specifically discussed herein.

This constitutes the decision and order of the court.

ENTER

MAY 0 5 2025

J.S.C.

Hon. Inga M. O'Neale
Justice, Supreme Court

15